J-S61028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                               :            PENNSYLVANIA
                                               :

             v.                           :
                                             :
                                             :

OMAR  MILLER                      :
                                             :

             Appellant            :     No. 350 EDA 2019

Appeal from the Judgment of Sentence Entered June 23, 2014
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004797-2013

BEFORE:   BOWES, J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:          **FILED DECEMBER 17, 2019**

Appellant, Omar Miller, appeals from the judgment of sentence entered on June 23, 2014, as made final by the denial of Appellant's post-sentence motion on December 27, 2018.  We affirm.

This Court previously summarized the facts and procedural posture underlying Appellant's convictions and sentence:

> On May 5, 2013, [Appellant], Andre Collier, Rasheed Teel, and Charles Freeman devised a plan to rob [19]-year-old Kareem Borowy.  Freeman drove the group to Borowy's house in Pottstown, Pennsylvania, and waited in the car while [Appellant], Teel, and Collier entered the residence.  Once inside, Collier, armed with a .45 caliber Glock pistol, demanded that Borowy hand over a large quantity of marijuana and $3,000.00 in cash.  Borowy pleaded with the robbers, insisting that there was no money in the home.

---

[*] Former Justice specially assigned to the Superior Court.

Sensing that the trio was growing impatient, Borowy falsely told them that he kept his money in a "stash house" at a different location. The men then took Borowy outside and forced him into the getaway car. Freeman drove away from the residence, presumably intending to travel to Borowy's contrived stash house. When the vehicle slowed down on a rural roadway in Lower Pottsgrove Township, Borowy managed to escape from the vehicle. Collier chased after Borowy and shot him twice. When he returned to the vehicle, Collier told the others that he saw Borowy fall to the ground, and instructed Freeman to drive away.

Although severely injured, Borowy managed to crawl on his hands and knees to the main roadway. A passing motorist spotted Borowy [lying] beside the road a short time later and called 911. When the police arrived, Borowy was unresponsive. He was pronounced dead at the scene.

Four weeks later, on June 3, 2013, a team of federal, state, and local law enforcement officers arrested [Appellant] on the sidewalk outside of his uncle's home in Philadelphia, Pennsylvania. The officers took [Appellant] to the homicide unit of the Montgomery County Detectives' Bureau. Detective Todd Richard brought [Appellant] into a conference room and informed him of his right to remain silent and his right to counsel. On July 4, 2013, at 12:49 a.m., [Appellant] signed a written waiver of those rights.

Over the course of the next [11] hours, [Appellant] made four separate on-the-record statements. Each time, Detective Richard transcribed both his questions and [Appellant's] answers. [Appellant] then reviewed Detective Richard's transcriptions, agreed that they were accurate, and signed them.

In [Appellant's] first statement, which began at 1:01 a.m., he stated that he could not recall whether he was in Pottstown on the day that Borowy was killed. [Appellant] categorically denied participating either in the robbery or in the murder. At 1:47 a.m., Detective Richard gave [Appellant] a break to smoke a cigarette and to use the restroom. At 2:22 a.m., Detective Richard resumed his questioning. At that time, [Appellant] gave a second

- 2 -

statement to Detective Richard, which concluded at 2:48 a.m.

[Appellant] gave a third statement to Detective Richard, which began at 6:35 a.m. [Appellant] admitted that he "didn't tell [the detectives] everything" in his earlier statements. [Appellant] went on to confess that, on the afternoon of Borowy's murder, he overheard Collier, Freeman, and Teel planning a robbery. He also stated that Collier was carrying a weapon, which [Appellant] described as "a big ass black, semi-automatic with a clip sticking out." Still, [Appellant] denied that he had participated in either the planning or the execution of the robbery.

After giving his third statement, [Appellant] asked for something to eat. The detectives gave [Appellant] a breakfast sandwich and apple juice. [Appellant] then asked to speak with Detective Richard's "boss." Detective Richard left [Appellant] in the conference room to finish his breakfast, and told his supervisor, Lieutenant James McGowan, that [Appellant] wanted to speak with him.

When Lieutenant McGowan entered the conference room, he found [Appellant] with his head down on the table. Lieutenant McGowan asked [Appellant] what he wanted to discuss, and [Appellant] began crying. [Appellant] told Lieutenant McGowan that he was at the scene of the murder and that he saw Collier shoot Borowy. [Appellant] then stated that he wanted to continue talking to Detective Richard.

Detective Richard reentered the conference room and took another statement from [Appellant]. In [Appellant's] fourth statement, which began at 11:08 a.m., [Appellant] confessed that he was present during the robbery and the murder. He told Detective Richard that "[Collier] killed that boy and I told him not to." [Appellant] was charged with homicide, kidnapping, robbery, persons not to possess a firearm, receiving stolen property, and false imprisonment. The Commonwealth also charged [Appellant] with conspiracy to commit each of those offenses.

On December 31, 2013, [Appellant] filed a motion to suppress the inculpatory statements that he made to

- 3 -

detectives on June 4, 2013. In his motion, [Appellant] asserted two bases for suppression of his statement. First, [Appellant] argued that, "[u]nder the totality of the circumstances, [Appellant's] inculpatory statements were not made voluntarily." [Appellant's Motion to Suppress, 12/31/13, at 2]. Second, [Appellant] asserted that, "[d]uring the course of questioning, [Appellant] made a request for counsel, even naming such counsel, but detectives did not then terminate the interrogation." *Id.*

The trial court held a three-day hearing on [Appellant's] motion to suppress, which commenced on January 7, 2014. At the beginning of that hearing, the trial court asked [Appellant's] attorney to state on the record the basis for his suppression motion. He responded as follows:

> [W]e have an issue about my client's statement. My client was arrested at about midnight, say 12:01 a.m., on June 4th. The inculpatory statement came on the fourth or fifth attempt of the officers to question him, and it was ultimately given at 11:30, almost – in the morning – 12 hours later.
>
> My primary issue is the right to counsel, as opposed to the totality of the circumstances, although I will touch upon them. But my primary issue is the violation of his right to counsel during that process.

[N.T. Suppression Hearing, 1/7/14, at 20-21].

The Commonwealth presented testimony from Detective Richard and Lieutenant McGowan at the hearing. That testimony directly addressed the issues that [Appellant] set forth in his suppression motion and reiterated on the record at the beginning of the hearing, namely, (1) whether the totality of the circumstances demonstrated that [Appellant's] statement was involuntary, and (2) whether the detectives continued to question [Appellant] after he had invoked his right to counsel. On April 10, 2014, the trial court denied [Appellant's] suppression motion.

The Commonwealth joined the cases against [Appellant], Collier, and Freeman for trial.[fn.4] *See* Pa.R.Crim.P. 582 ("Defendants charged in separate indictments or

- 4 -

informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."). On April 21, 2014, following a five-day jury trial, [Appellant] was convicted of second-degree murder, robbery, kidnapping, conspiracy to commit kidnapping, and conspiracy to commit robbery.[1] On June 23, 2014, the trial court sentenced [Appellant] to life imprisonment.

> [fn.4] Teel pleaded guilty to third-degree murder, and agreed to testify for the Commonwealth at his co-conspirators' trial.

**Commonwealth v. Miller**, 134 A.3d 109 (Pa. Super. 2015) (unpublished memorandum) at 1-6 (some citations and footnotes omitted).

Appellant filed a timely notice of appeal and raised one claim to this Court: that the trial court erred when it denied his suppression motion "because the initial warnings that Detective Richard read at 12:49 a.m. [had become] stale." **Id.** at 10. We held that Appellant's lone appellate claim was waived on appeal, as Appellant never raised the claim before the trial court. **Id.**; **see also Commonwealth v. Little**, 903 A.2d 1269, 1272-1273 (Pa. Super. 2006) ("appellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal"); Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

---

1 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 2901(a)(3), and 903, respectively.

On July 8, 2016, Appellant filed a timely, *pro se* petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Within this petition, Appellant claimed that his trial counsel "was ineffective because, the Superior Court in its opinion affirming the trial court judgment, declared that trial counsel had failed to properly preserve, and therefore had waived, [Appellant's] meritorious argument that the failure of the police to re-advise [Appellant] of his **Miranda**[2] rights during subsequent interrogation sessions was a violation of [Appellant's] Constitutional rights." Appellant's *Pro Se* PCRA Petition, 7/8/16, at 2 (some capitalization omitted).

The PCRA court appointed counsel to represent Appellant. However, counsel filed a no-merit letter and a request to withdraw, pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). The PCRA court granted counsel's petition to withdraw in an order entered October 11, 2016. PCRA Court Order, 10/11/16, at 1-5.

After the PCRA court permitted counsel to withdraw, Appellant filed a *pro se* motion and requested that the PCRA court provide him with the transcripts of his case, so that he could prepare an amended PCRA petition. **See** Appellant's *Pro Se* Motion for Order of Discovery and Transcripts, 10/18/16, at 1-4. The PCRA court denied Appellant's motion on October 26,

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

2016 and dismissed Appellant's PCRA petition in an order dated November 29, 2016. PCRA Court Order, 10/26/16, at 1; PCRA Court Order, 11/30/16, at 1.

Appellant appealed the dismissal order and, on appeal, a panel of this Court vacated the PCRA court's order. We held that the PCRA court erred when it refused Appellant's *pro se* request to receive the transcripts in his case – which Appellant filed after the PCRA court allowed his counsel to withdraw and before the court finally dismissed the petition. We thus vacated the PCRA court's order, instructed the PCRA court to provide Appellant with all of the transcripts in the case, and ordered that the PCRA court provide Appellant with the right to file an amended PCRA petition. **Commonwealth v. Miller**, 178 A.3d 205 (Pa. Super. 2017) (unpublished memorandum) at 1-8.

On remand, Appellant filed an amended, *pro se* PCRA petition. **See** Appellant's Amended Petition for *Habeas Corpus* Relief and Statutory Post Conviction Collateral Relief, 2/21/18, at 1-36. Appellant raised a number of claims in this petition, including: "counsel rendered ineffective assistance by failing to properly raise and litigate before the Superior Court [Appellant's] properly preserved meritorious issues of (1) under the totality of the circumstances [Appellant's] inculpatory statements were not made voluntarily, and (2) during the course of questioning [Appellant] made a request for counsel . . . but [the] detective did not terminate the interrogation." **Id.** at 16 (some capitalization omitted).

In an opinion and order entered May 31, 2018, the PCRA court granted Appellant post-conviction collateral relief and reinstated Appellant's right to

file both a post-sentence motion and a direct appeal *nunc pro tunc*. ***Id.*** at 1-10. Citing to ***Commonwealth v. Rosado***, 150 A.3d 425 (Pa. 2016), the PCRA court concluded that Appellant's prior counsel on direct appeal was ineffective for filing an appellate brief that advocated a single, unpreserved claim and abandoned claims that were otherwise preserved. ***See*** PCRA Court Opinion, 5/31/18, at 6-9; ***Rosado***, 150 A.3d at 426-427 (holding: "filing an appellate brief which abandons all preserved issues in favor of unpreserved ones constitutes ineffective assistance of counsel *per se*"). The PCRA court ordered: Appellant was entitled to new counsel; new counsel was given time to review the record, consult with Appellant, and draft a post-sentence motion; and, counsel's post-sentence motion was due on or before August 3, 2018. PCRA Court Order, 5/31/18, at 10. Through a succession of orders, the trial court extended the due-date for Appellant's post-sentence motion to October 26, 2018. ***See*** Trial Court Order, 7/2/18, at 1-2; Trial Court Order, 9/4/18, at 1; Trial Court Order, 10/15/18, at 1.

Appellant, through counsel, filed the *nunc pro tunc* post-sentence motion on October 26, 2018. Appellant raised a number of claims in this post-sentence motion, including that the trial court erred when it refused to suppress certain inculpatory statements he made during the custodial interrogation. Specifically, Appellant claimed his statements should have been suppressed because: 1) "[t]he detectives failed to honor [Appellant's] invocation of his right to counsel" during the interrogation and 2) "[t]he totality of the circumstances indicate[] that [Appellant] did not knowingly,

intelligently, and voluntarily waive his rights pursuant to *Miranda*."

Appellant's *Nunc Pro Tunc* Post-Sentence Motion, 10/26/18, at 2-3.

The trial court denied Appellant's post-sentence motion on December 27, 2018 and Appellant filed a notice of appeal on January 22, 2019. Appellant raises two claims on appeal:

> 1. Did the trial court err in failing to suppress statements made to detectives following Appellant invoking his right to counsel in violation of Article 1, Section 9 of the Pennsylvania Constitution and the 5th, 6th, and 14th Amendments of the United States Constitution?
>
> 2. Did the trial court err in failing to suppress [Appellant's] statements to detectives where waiver of his constitutional rights was not knowing, intelligent, or voluntary because Appellant continued to bleed from his head and suffer from injuries of police tackling him, physically accosting him, and deploying a taser to his head at the time of his arrest, prior to admonishment and wavier of his constitutional rights in violation of his due process rights protected under Article 1, Section 9 of the Pennsylvania Constitution and the 14th Amendment of the United States Constitution?

Appellant's Brief at 4 (some capitalization omitted).

Before turning to the merits of this appeal, we must address two preliminary claims raised by the Commonwealth, both of which challenge the timeliness of this appeal. *See* Commonwealth's Brief at 11-14; *see also* **Commonwealth v. Trinidad**, 96 A.3d 1031, 1034 (Pa. Super. 2014) ("[i]t is well settled that the timeliness of an appeal implicates our jurisdiction and may be considered *sua sponte*. Jurisdiction is vested in the Superior Court upon the filing of a timely notice of appeal") (citations and quotations omitted). First, within the Commonwealth's brief to this Court, the

Commonwealth faults the PCRA court for reinstating Appellant's right to file a post-sentence motion *nunc pro tunc*. ***See*** Commonwealth's Brief at 12. According to the Commonwealth, this portion of the PCRA court's order was erroneous because Appellant did not request the restoration of his post-sentence motion rights in his *pro se* amended PCRA petition. ***See id.*** The Commonwealth claims that, since the PCRA court erred when it reinstated Appellant's right to file a *nunc pro tunc* post-sentence motion, Appellant was not entitled to file a post-sentence motion and his current appeal is untimely. ***Id.*** at 12-13.

The Commonwealth's contention is not well taken, given that the PCRA court expressly reinstated Appellant's right to file a post-sentence motion *nunc pro tunc*, the Commonwealth did not file a notice of appeal from the PCRA court's order, and we are now on direct appeal. Simply stated, at this point in the case, the Commonwealth has lost the right to complain about the relief the PCRA court afforded Appellant. ***See*** Pa.R.A.P. 903(a) (generally providing a party with 30 days in which to file a notice of appeal).

The Commonwealth raises a second claim as to why the current appeal is untimely. ***See*** Commonwealth's Brief at 11-14. The Commonwealth notes that, in an order entered on May 31, 2018, the PCRA court reinstated Appellant's right to file a post-sentence motion and direct appeal *nunc pro tunc*. ***Id.*** at 11. The Commonwealth claims that Appellant was required to file his post-sentence motion within ten days of this order (or, by June 9, 2018) and to file his notice of appeal within 30 days of the order (or, by June

30, 2018). *Id.* According to the Commonwealth, Appellant's October 26, 2018 post-sentence motion and January 22, 2019 notice of appeal were both untimely and we must quash the appeal.

The Commonwealth's claim fails. First, and contrary to the Commonwealth's assertion, Appellant's post-sentence motion was not due within ten days of the PCRA court's May 31, 2018 order. Rather, the PCRA court's May 31, 2018 order expressly declared that counsel's post-sentence motion was due on or before **August 3, 2018**. PCRA Court Order, 5/31/18, at 10. Further, the PCRA court undoubtedly had the authority to tailor its order to the circumstances of the case and to grant Appellant all appropriate relief – including granting Appellant's new counsel an extended time in which to file the post-sentence motion. *See* 42 Pa.C.S.A. § 9546(a) ("[i]f the court rules in favor of the petitioner, **it shall order appropriate relief** and issue supplementary orders as to rearraignment, retrial, custody, bail, discharge, correction of sentence **or other matters that are necessary and proper**") (emphasis added).

Following the PCRA court's order, the trial court filed three successive orders and, in these orders, explicitly extended the filing date for Appellant's post-sentence motion to October 26, 2018. *See* Trial Court Order, 7/2/18, at 1-2; Trial Court Order, 9/4/18, at 1; Trial Court Order, 10/15/18, at 1. These orders, too, were proper, for this Court has held: a "trial court clearly ha[s] the authority to grant or deny [a]ppellant an extension of time in which to file his post-sentence motion." *Commonwealth v. Moore*, 978 A.2d 988, 991

(Pa. Super. 2009); *see also Commonwealth v. Dreves*, 839 A.2d 1122, 1128-1129 (Pa. Super. 2003) (*en banc*) (holding that the trial court possesses discretion to allow a defendant to file a post-sentence motion *nunc pro tunc*).

Appellant filed his post-sentence motion on October 26, 2018 – which was within the time the PCRA court and the trial court afforded him.  The trial court then denied the post-sentence motion on December 27, 2018 and Appellant filed a notice of appeal on January 22, 2019, which was within 30 days of the date the trial court denied his post-sentence motion.  We conclude that, given the express orders of the PCRA court and the trial court in this case, Appellant's appeal was timely and we will consider the merits of the appeal.[3]

---

[3] Further, we note that, even if the trial court had somehow erred in extending the due-date for Appellant's post-sentence motion, we would have still not quashed this appeal, as the trial court's orders would have constituted a breakdown in the court system.  ***See Commonwealth v. Anwyll***, 482 A.2d 656, 657 (Pa. Super. 1984) ("[g]iven the trial court's misstatement of the appeal period, appellant's failure to appeal on time would appear to be the result of a breakdown in the court's operation.  In these circumstances we might remand with instructions to permit appellant to file his appeal *nunc pro tunc*, but to save judicial time, we will not remand but will regard the appeal as though filed *nunc pro tunc* and will consider it on the merits") (citations omitted); ***Commonwealth v. Wright***, 846 A.2d 730, 735 (Pa. Super. 2004) ("the order restoring Appellant's direct appeal rights did not inform Appellant that he had 30 days to file the appeal. Accordingly, we will not fault Appellant for failing to appeal within 30 days of the restoration of his direct appeal rights. Therefore, we will not quash the instant appeal"); ***cf. Commonwealth v. Hurst***, 532 A.2d 865, 867 (Pa. Super. 1987) ("a trial judge must advise a defendant on the record at the time of sentencing of the defendant's right to file an appeal and the time within which that right must be exercised.  In the case at bar, the trial judge failed to inform Appellant of his appellate rights.

Both of Appellant's claims challenge the trial court's denial of his motion to suppress. As we have held: "[o]nce a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Wallace**, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*); **see also** Pa.R.Crim.P. 581(H). With respect to an appeal from the denial of a motion to suppress, our Supreme Court has declared:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing [such a ruling by the] suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). Further, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." **Commonwealth v. Gallagher**, 896 A.2d 583, 585 (Pa. Super. 2006).

---

By virtue of this fact, we shall not quash this untimely appeal") (citations omitted).

- 13 -

First, Appellant claims that the trial court erred when it denied his suppression motion, as the police continued to question him after he invoked his right to counsel. Appellant's Brief at 7.

We have summarized:

> In ***Edwards v. Arizona***, the [United States] Supreme Court addressed the consequences of a suspect's invocation of the right to counsel. The ***Edwards*** court held that "when an accused has invoked his right to have counsel present during custodial interrogation," police may not conduct further interrogations "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. [477, 484–485 (1981)]. If police conduct further interrogations outside the presence of counsel, "the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." ***McNeil v. Wisconsin***, 501 U.S. 171, 177 (1991).
>
> . . .
>
> The inquiry into whether or not a suspect has invoked the right to counsel is an objective one. [In ***Davis v. United States***, the United States Supreme Court] explained that a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement be a request for an attorney." [***Davis v. United States***, 512 U.S. 452, 459 (1994)]. However, if the statement is "ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel," police are not required to cease questioning. ***Id.***

***Commonwealth v. Champney***, 161 A.3d 265, 272-273 (Pa. Super. 2017) (*en banc*) (emphasis, parenthetical information, and some citations omitted).

On appeal, Appellant argues:

> After providing a statement to Detective Richard, [the detective] confronted Appellant, telling Appellant that he believed Appellant was lying. At this time, Appellant clearly and unequivocally invoked his right to counsel. Appellant even identified his attorney by name, who represented Appellant at a previous, unrelated trial two years prior and with which Detective Richard was involved. Detective Richard told Appellant that his attorney represented a co-defendant and did not permit Appellant contact [with] his attorney.
>
> Two other witnesses corroborated the fact that Appellant invoked his attorney, by name. Appellant's grandmother recounted a conversation with him on the early morning of June 4, 2013, wherein she instructed Appellant to wait for his attorney prior to speaking with police. Appellant's uncle recounted a conversation with Appellant's grandmother where she told him that she informed Appellant not to say anything to police until speaking with his attorney.

Appellant's Brief at 8-9 (citations omitted).

According to Appellant, since the police continued to question him after he invoked his right to counsel, all incriminating statements he made after that point must be suppressed. *Id.*

Appellant's claim on appeal necessarily fails, as it impermissibly views the evidence presented at the suppression hearing in the light most favorable to Appellant. To be sure, although Appellant testified that, during the custodial interrogation, he told Detective Richard that he wished to speak to his attorney, Detective Richard expressly testified that Appellant did not ask to speak to an attorney at any point during the interrogation. N.T. Suppression Hearing, 1/7/14, at 135-136 ("Q: Now, prior to you reading [Appellant] his

- 15 -

rights, did he ever ask for a lawyer?; [Detective Richard]: He did not."); 138 ("Q: Did you ever hear [Appellant] ask for a lawyer?; [Detective Richard]: Not once."); 141 ("Q: And during that last portion, did [Appellant] ever ask for a lawyer?; [Detective Richard]: No."); 148 ("Q: And your testimony is he never asked for an attorney?; [Detective Richard]: He did not."); 148 ("Q: So this night when [Appellant] got arrested, he never asked to speak to [Attorney Doug Breidenbach]?; [Detective Richard]: He did not."); *see also* N.T. Suppression Hearing, 1/10/14, at 17 (Lieutenant McGowan also testified that, during their interaction, Appellant never asked to speak to a lawyer).

On this appeal from the denial of Appellant's suppression motion, our standard of review requires that we "consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record." *Eichinger*, 915 A.2d at 1134. Viewed in this light, Appellant's claim on appeal plainly fails: the Commonwealth's evidence supports the trial court's conclusion that at no point during the custodial interrogation did Appellant ever request to speak to a lawyer.

Next, Appellant claims that the trial court erred when it denied his suppression motion because he was involved in a physical confrontation with the police prior to the custodial interrogation and, consequently, his waiver of his constitutional rights was not knowing, voluntary, and intelligent. Appellant's Brief at 9-11.

Our Supreme Court has held:

because of the inherently coercive nature of police custodial interrogation, statements elicited from an accused in that environment are inadmissible unless the accused was informed of and, *inter alia*, voluntarily waived his privilege against self-incrimination and the right to counsel. Waiver is made voluntarily if the decision to make it is the product of a free and unconstrained choice. In determining whether a waiver is valid, a suppression court looks to the totality of the circumstances surrounding the waiver, including but not limited to the declarant's physical and psychological state, the attitude exhibited by the police during the interrogation, and any other factors which may serve to drain one's powers of resistance to suggestion and coercion. On appeal, this Court will reverse the suppression court's determination in this regard only where it finds an error of law or finding of fact without record support.

***Commonwealth v. Lyons***, 79 A.3d 1053, 1066 (Pa. 2013) (citations omitted).

Appellant claims that the totality of the circumstances does not support the trial court's conclusion that he knowingly, voluntarily, and intelligently waived his constitutional rights. Appellant argues:

Appellant was involved in a physical confrontation with police[, while he was resisting arrest,] less than two hours prior to being admonished of his constitutional rights. He was bleeding from his head and police failed to obtain medical treatment for him to determine whether his psychological and physical state permitted him to speak to police. The Commonwealth presented insufficient evidence at the suppression hearing to sustain its burden in establishing that Appellant knowingly, intelligently, and voluntarily waived his constitutional rights in speaking with the police.

Appellant's Brief at 11.

Again, Appellant's claim fails because Appellant does not view the evidence in the light most favorable to the Commonwealth. Certainly, during

the suppression hearing, Detective Richard testified that he saw Appellant immediately after the arrest and he did not "recall anything remarkable about" Appellant's physical status. N.T. Suppression Hearing, 1/10/14, at 9. Detective Richard clarified: "[Appellant] may have had a cut on his head, a small cut. But I mean, he was walking towards me, unassisted." *Id.* Further, Detective Richard specifically testified that, during the custodial interrogation, Appellant did not "appear to have any injuries or any other physical ailments that would [have] interfere[d] with his ability to understand what was going on." N.T. Suppression Hearing, 1/7/14, at 133.

Detective Richard's above-summarized testimony is sufficient to support the trial court's conclusion that Appellant's physical confrontation with the police did not render his *Miranda* waiver unknowing, unintelligent, or involuntary. Therefore, Appellant's second claim on appeal also fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/19