**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Sherman WRIGHT, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 2004.
Filed March 26, 2004.

Jeffrey B. Engle, Millersburg, for appellant.

James P. Barker, Asst. Dist. Atty., Harrisburg, for Com., appellee.

BEFORE: DEL SOLE, P.J., JOYCE and KLEIN, JJ.

OPINION BY JOYCE, J.:

¶ 1 Appellant, Sherman Wright, appeals from the judgment of sentence entered in the Court of Common Pleas of Dauphin County following his conviction of possession with intent to deliver a controlled substance, possession of drug paraphernalia, and possession of a small amount of marijuana.[2] After review, we affirm.

¶ 2 On June 8, 2001, at around midnight, Officer John Evans of the Harrisburg City Police Department, and Officer Jason Snyder of the Dauphin County Adult Probation and Parole Office, were conducting surveillance in the City of Harrisburg in the area of North Sixth and Harris Streets outside Roebuck's Bar—an area noted for illegal drug activities. At about 12:34 a.m., the officers observed a dark-colored car

**2.** 35 P.S. §§ 780–113(a)(30), 780–113(a)(32), and 780–113(a)(31), respectively.

drive up and park at the 500 block of Harris Street. They also observed what appeared to be two illegal drug transactions between Appellant and one of the occupants of the car (on two occasions, Appellant pulled something out of his pocket and handed it to an occupant of the vehicle and received money in exchange). Officer Snyder recognized Appellant and informed Officer Evans that Appellant's name is Sherman Wright. Officer Evans then ran a computer search using Appellant's name and discovered that Appellant had outstanding traffic tickets for which warrants had been issued for his arrest. Based on this information, Officer Evans decided to arrest Appellant. He then radioed for the assistance of other police officers. As Officer Evans approached, Appellant ran down the street toward the area where Officer Snyder was waiting. Before reaching Officer Snyder's location, Appellant reached into his right pocket, retrieved an object from his pocket and made a throwing motion. Shortly thereafter, Appellant was apprehended. The object which Appellant threw to the ground was retrieved and was determined to be a clear sandwich baggie containing 58 clear plastic bags of crack cocaine. A search of Appellant's person yielded an orange Ziploc bag of marijuana, two vials of marijuana, a cellular phone, and $80.00 in cash.

¶ 3 On the strength of the above facts, Appellant was charged with possession with intent to deliver a controlled substance, possession of drug paraphernalia, and possession of a small amount of marijuana. The case was tried before a jury, and on February 10, 2002, the jury found Appellant guilty of all charges. On April 15, 2002, the trial court sentenced Appellant to an aggregate term of three to six years' imprisonment plus fines and costs. Appellant was represented at trial by Attorney Lawrence Rosen. Attorney Rosen did not file a post-sentence motion on Appellant's behalf. Attorney Rosen also failed to file an appeal on Appellant's behalf despite Appellant's request that appeal be filed.

¶ 4 On September 23, 2002, acting *pro se*, Appellant filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–46. The PCRA court appointed current counsel, Attorney Jeffrey B. Engle, to represent Appellant in the PCRA proceedings. On February 26, 2003, Attorney Engle filed an amended PCRA petition seeking the restoration of Appellant's direct appeal rights *nunc pro tunc* because of trial counsel's failure to file a direct appeal as Appellant had requested. The Commonwealth did not oppose Appellant's request for the reinstatement of his direct appeal rights. On April 2, 2003, the PCRA court issued an order which stated in pertinent part: "Petitioner, Sherman Wright, pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–46, is hereby granted leave to file a Notice of Direct Appeal *nunc pro tunc* to the Pennsylvania Superior Court." *See* Certified Record at # 29–1.

¶ 5 Rather than filing a direct appeal following the reinstatement of his direct appeal rights, on April 11, 2003, Appellant inexplicably filed a post-sentence motion instead. For some reason, the trial court entertained but ultimately denied this untimely post-sentence motion on May 21, 2003. On May 29, 2003, Appellant filed the present appeal.

■ ¶ 6 Instantly, we must note that there was no authority for Appellant to file a post-sentence motion on April 11, 2003 as it was clearly untimely and there was no authority for the trial court to entertain this motion. The PCRA court did not restore Appellant's right to file a post-sentence motion *nunc pro tunc*. The PCRA court only reinstated Appellant's

direct appeal rights *nunc pro tunc*. Indeed, in his PCRA petition Appellant did not seek the restoration of his right to file a post-sentence motion *nunc pro tunc*. Since Appellant's right to file a post-sentence motion was not restored *nunc pro tunc*, the trial court should not have entertained Appellant's post-sentence motion which was clearly untimely. In *Commonwealth v. Dreves*, 839 A.2d 1122 (Pa.Super.2003) (en banc), we observed that:

> To be entitled to file a post-sentence motion *nunc pro tunc*, a defendant must, within 30 days after the imposition of sentence, demonstrate sufficient cause, i.e., reasons that excuse the late filing.... When the defendant has met this burden and has shown sufficient cause, the trial court must then exercise its discretion in deciding whether to permit the defendant to file the post-sentence motion *nunc pro tunc*. If the trial court chooses to permit a defendant to file a post-sentence motion *nunc pro tunc*, the court must do so expressly. In employing the above line of reasoning, we find instructive cases dealing with the restoration of direct appeal rights *nunc pro tunc*. In *Commonwealth v. Stock*, 545 Pa. 13, 679 A.2d 760, 764 (1996) for instance, our Supreme Court opined that in order for an appeal *nunc pro tunc* to be granted, the appellant would have to show an extraordinary circumstance wherein a direct appeal by right was lost. *Accord, Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 643 n. 7 (1998). Similarly, in order for a petition to file a post-sentence motion *nunc pro tunc* to be granted, a defendant must, within 30 days after the imposition of sentence, demonstrate an extraordinary circumstance which excuses the tardiness.

> If the trial court does not expressly grant *nunc pro tunc* relief, the time

for filing an appeal is neither tolled nor extended. The request for *nunc pro tunc* relief is separate and distinct from the merits of the underlying post-sentence motion. The trial court's resolution of the merits of the late post-sentence motion is no substitute for an order expressly granting *nunc pro tunc* relief. Also, when the trial court grants a request to file a post-sentence motion *nunc pro tunc*, the post-sentence motion filed as a result must be treated as though it were filed within the 10–day period following the imposition of sentence.

*Dreves*, 839 A.2d at 1128–1129.

¶ 7 In the case at bar, we reiterate that Appellant did not seek the reinstatement of his right to file a post-sentence motion and the trial court did not expressly reinstate Appellant's right to file a post-sentence motion *nunc pro tunc*. The trial court's resolution of Appellant's belated post-sentence motion was no substitute for an order expressly restoring the right to file a post-sentence motion *nunc pro tunc*. Also, the PCRA court order reinstating Appellant's direct appeal rights did not automatically reinstate Appellant's right to file a post-sentence motion. Thus, it was error to entertain Appellant's untimely post-sentence motion. Therefore, in our review of the present appeal, we will ignore the untimely post-sentence motion which was erroneously entertained.

¶ 8 Our review of the instant appeal shows that it was filed on May 29, 2003, almost two months after the reinstatement of the direct appeal rights. Under these circumstances, the instant appeal must be deemed untimely. When the trial court issues an order reinstating an appellant's appeal rights, the appellant must file the appeal within 30 days of the order reinstating the appeal rights.[3] To permit an

---

3. *See* Pa.R.A.P. 903(a) (Except as otherwise

prescribed by this rule, the notice of appeal

appellant to file the appeal more than thirty days after the reinstatement would put the appellant in a better position than he would have been absent counsel's failure to file a timely direct appeal.

¶ 9 Further, the term *nunc pro tunc* means "now for then." *See* Black's Law Dictionary, at 1069, (Sixth Edition 1990). It is "a phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, *i.e.*, with the same effect as if regularly done." *Id.* Thus, reinstatement of direct appeal rights *nunc pro tunc* denotes that the appellant now has the same direct appeal rights as he would have had in the beginning. Since in the beginning an appellant ordinarily must file his direct appeal within thirty days of the date of imposition of sentence (or the date of entry of the order disposing post-sentence motions),[4] it is logical and fair to apply the same thirty-day rule when an appellant's direct appeal rights are restored *nunc pro tunc*. Under this rationale, in the instant case, Appellant was required to file the instant appeal within 30 days of the entry of the order reinstating his direct appeal rights. As Appellant did not file the instant appeal within 30 days of the order restoring his direct appeal rights, this appeal is untimely.

¶ 10 The above notwithstanding, we note that the order restoring Appellant's direct appeal rights did not inform Appellant that he had 30 days to file the appeal. Accordingly, we will not fault Appellant for failing to appeal within 30 days of the restoration of his direct appeal rights. Therefore, we will not quash the instant appeal. *See Commonwealth v. Hurst,* 367 Pa.Super. 214, 532 A.2d 865, 867 (1987) (a trial judge must advise a

defendant of his right to file an appeal and the time within which that right must be exercised; where the trial judge failed to inform a defendant of his appellate rights, an otherwise untimely appeal will not be quashed); *Commonwealth v. Curry,* 318 Pa.Super. 490, 465 A.2d 660, (1983) (sentencing court erroneously failed to advise the defendant of his right to file a motion for reconsideration of sentence within ten days of imposition of sentence, and its failure to do so was not offset in any way by its thorough advice as to defendant's right to appeal); *Commonwealth v. Katz,* 318 Pa.Super. 282, 464 A.2d 1343 (1983) (an otherwise untimely appeal would not be considered untimely because the defendant was not informed of his right to appeal and time within which he must exercise such right, thus precluding assumption that his decision to exercise his appellate rights late was done in a knowing, intelligent, and voluntary manner). *See generally,* Pa.R.Crim.P. 704(c) (dealing with a trial court's duty to inform the defendant of his post-sentencing and appellate rights and the time within which such rights must be exercised). Although the cases cited above did not specifically address situations where the PCRA court reinstated a defendant's direct appeal rights *nunc pro tunc* but failed to inform the defendant of the time within which he must file such appeal, we are persuaded by the rationale employed in those cases. Along those lines, we wish to make it clear that if a PCRA court restores a defendant's direct appeal rights *nunc pro tunc*, the court must inform the defendant that the appeal must be filed within 30 days of the entry of the order. In the present case, the trial court's error in failing to inform Appellant of the time for

shall be filed within 30 days after the entry of the order from which the appeal is taken).

4. *See* Pa.R.Crim.P. 720.

taking the appeal (following the reinstatement) was compounded by the court's decision to entertain Appellant's patently untimely post-sentence motion even though Appellant's right to file post-sentence motion was not restored *nunc pro tunc.* Under these circumstances, we will not quash this appeal as untimely.

¶ 11 Before reaching the merits of this appeal, we observe that Appellant's counsel filed with this Court both an *Anders* [5] brief and a petition seeking to withdraw as counsel. The brief challenges the weight and sufficiency of the evidence underlying Appellant's conviction. In the petition, Appellant's counsel seeks to withdraw his representation on the grounds that he finds the issues to ·be without merit, and the appeal totally frivolous.

¶ 12 When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw representation. *Commonwealth v. Boyd,* 763 A.2d 421, 423 (Pa.Super.2000). To be permitted to withdraw pursuant to *Anders,* counsel must: (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of this Court's attention. *Commonwealth v. Ferguson,* 761 A.2d 613, 616 (Pa.Super.2000) (citations omitted). Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous. *Commonwealth v. Hernandez,* 783 A.2d 784, 786 (Pa.Super.2001).

¶ 13 In this case, counsel has filed a petition to withdraw, submitted an *Anders* brief, and notified Appellant of his right to retain new counsel or proceed pro se. Thus, counsel has fulfilled the technical requirements of *Anders* and its Pennsylvania progeny. Therefore, we shall proceed to an independent evaluation of the record to determine the accuracy of counsel's averment that this appeal is wholly frivolous. Counsel has addressed two issues in the *Anders* brief filed with this Court, dealing with weight and sufficiency of the evidence.

¶ 14 With respect to the weight of the evidence claim, we note that "[a]n allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Sullivan,* 820 A.2d 795, 805–06 (Pa.Super.2003). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 753 (2000). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Sullivan,* 820 A.2d at 806 (citation omitted). In the instant case, Appellant's weight claim could be deemed waived because of Appellant's failure to raise the issue in a timely post-sentence motion. *See Commonwealth v. Burkett,* 830 A.2d 1034, 1037 (Pa.Super.2003) (a weight of the evidence claim must be presented to the trial court while it exercises jurisdiction over a matter since

---

**5.** *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *Commonwealth v. McClendon,* 495 Pa. 467, 434 A.2d 1185 (1981).

appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Rule 607 of the Pennsylvania Rules of Criminal Procedure requires the **timely** presentation, and preservation, of weight claims. Failure to avail oneself of the prescribed methods of presenting a weight claim to the trial court results in a waiver).

▅▅ ¶ 15 Even absent waiver, Appellant's weight of the evidence claim is frivolous. Appellant's weight claim was based on the allegation that the testimony of certain witnesses conflicted with the testimony of other witnesses. The trial judge who presided over Appellant's jury trial has opined that the verdict did not shock his sense of justice. The trial judge stated as follows:

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. Moreover, a new trial should not be granted because of mere conflict in testimony or because the judge on the same facts would have arrived at a different conclusion. In the instant matter, there is unquestionably a conflict between the testimony presented from each side. In a jury trial, the jury is free to believe all, part or none of the evidence presented and to assess the credibility of witnesses. Looking at all of the testimony, this Court cannot find it would shock one's sense of justice for the jury to find Defendant guilty of both charges before them. . .

Trial Court Opinion, 5/21/2003, at 9–10. Upon our review of the record, we find no abuse of discretion in the trial judge's conclusion. Accordingly, Appellant's weight of the evidence claim fails.

¶ 16 Appellant's challenge to the sufficiency of the evidence will be reviewed pursuant to the following standard.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Bullick,* 2003 PA Super 285, 8, 830 A.2d 998, 1000 (2003) (quoting *Commonwealth v. Gooding,* 818 A.2d 546, 549 (Pa.Super.2003)).

▅▅ ¶ 17 Viewed under the aforementioned standard, we find Appellant's challenge to the sufficiency of the evidence frivolous. The evidence presented at trial showed that the arresting officers observed Appellant engage in two apparent drug transactions. The officers also observed Appellant pull a bag from his pocket and throw it to the ground as he at-

tempted to flee. The bag which Appellant removed from his pocket was a clear plastic bag containing 58 tiny Ziploc bags containing crack cocaine.[6] The Commonwealth also presented the testimony of an experienced police officer who testified that based on his experience and considering the surrounding circumstances, the value of the crack cocaine was $580 and that Appellant's possession of this amount of cocaine (coupled with the absence of crack a pipe or marijuana pipe) indicated that it was for sale rather than for personal use. The above evidence was clearly sufficient to sustain Appellant's conviction of possession with intent to distribute a controlled substance.

¶ 18 With respect to Appellant's conviction of possession of a small amount of marijuana and possession of drug paraphernalia, we find that the Commonwealth presented sufficient evidence to support Appellant's conviction of these charges. It is undisputed that upon his arrest, a search of Appellant's person yielded an orange Ziploc bag of marijuana and two vials of marijuana, a cellular phone, and $80.00 in cash. This evidence sufficiently established Appellant's guilt with respect to the charges of possession of marijuana and possession of drug paraphernalia.

¶ 19 For the reasons stated above, we find Appellant's appeal frivolous. We will therefore affirm Appellant's judgment of sentence, and we grant counsel's motion to withdraw.

¶ 20 Judgment of sentence affirmed; motion to withdraw as counsel granted.

6. At trial, Appellant and the Commonwealth stipulated that the substance found within the baggies was tested by the Pennsylvania State Police Laboratory, and the test results showed the bags contained crack cocaine, with an aggregate weight of 3.5 grams. It was also stipulated that the substance recovered from Appellant's person was indeed marijuana as the laboratory tests showed.