J-S03036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT LIONEL MATTHEWS | : | |
| | : | |
| Appellant | : | No. 1151 WDA 2019 |

Appeal from the Judgment of Sentence Entered February 12, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000947-2018

BEFORE:  McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:               **FILED FEBRUARY 24, 2020**

Robert Lionel Matthews (Matthews) appeals *nunc pro tunc* from the judgment of sentence entered in the Court of Common Pleas of Fayette County (trial court) following his jury conviction of driving under the influence of a controlled substance (DUI) and recklessly endangering another person (REAP).[1]  Matthews challenges the sufficiency of the evidence supporting these convictions.  We affirm.

On November 23, 2017, just after 7:00 a.m., Matthews received a dose of methadone at a clinic as treatment for his addiction to pain medication.  He changed a flat tire after leaving the clinic and proceeded to travel north on the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(d)(2) and 18 Pa.C.S. § 2705.

roadway. Joseph Webster (Webster) was also travelling behind Matthews in the northbound lane. Webster observed Matthews' vehicle begin to straddle the two travel lanes heading north and then started to move into the southbound lane. Webster also observed Matthews make a rocking motion and slump down in the seat. Matthews drove through an empty parking lot, ran into a stop sign, crossed a street, and moved into the driveway of David Pato's (Pato) residence. Matthews' vehicle then collided into Pato's garage. The garage was attached to the residence. Pato was in the residence laying down in his bed, 15 feet away from the crash site. Webster exited his vehicle and saw Matthews slumped over into the front seat and called 911.

Pennsylvania State Police Officer Cameron Craig responded to the scene and observed that Matthews' legs were pinned in the drivers' seat area of his vehicle and his torso was over into the passenger area. Matthews explained that he had just come from the methadone clinic located a quarter mile down the road and that he had ingested methadone. Matthews' speech was slurred and slow and his breathing was slow as well. Officer Craig obtained a search warrant for a blood draw, which showed positive findings for methadone.

On February 4, 2019, following a jury trial, Matthews was found guilty of DUI, REAP and three summary traffic offenses.[2] On February 12, 2019, the trial court sentenced him to a term of intermediate punishment of 24 months,

_____

[2] Driving on Roadways Laned for Traffic, Reckless Driving, and Failure to Use a Seat Belt. *See* 75 Pa.C.S. §§ 3309(1), 3736(a), and 4581(a)(2)(ii).

with 180 days served on house arrest with electric monitoring. Although Matthews did not initially file a timely direct appeal, the trial court later entered an order restoring his direct appeal rights *nunc pro tunc* on June 7, 2019. Matthews filed his notice of appeal more than 30 days later on July 30, 2019. He and the trial court complied with Rule 1925. **See** Pa.R.A.P. 1925(a) - (b).

On appeal, Matthews challenges the sufficiency of the evidence supporting his DUI and REAP convictions. Before reaching the merits of these issues, we must address the timeliness of this appeal.

"When the trial court issues an order reinstating an appellant's appeal rights, the appellant must file the appeal within 30 days of the order reinstating the appeal rights." **Commonwealth v. Wright**, 846 A.2d 730, 734–35 (Pa. Super. 2004) (citation omitted). However, quashal of an appeal is not warranted, even when filed past the 30-day deadline, if the trial court's order restoring an appellant's direct appeal rights did not advise him of the thirty-day requirement*. **See id.***

As previously noted, the record reflects that Matthews filed his notice of appeal more than 30 days after the trial court reinstated his direct appeal rights. We nonetheless decline to quash this appeal because the court's order restoring his direct appeal rights did not inform him of the 30-day deadline. We will, therefore, consider Matthews' sufficiency claims on the merits.

"The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa. Super. 2019) (citation omitted). "In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder." *Id.* (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* (citation omitted). Finally, the jury, while assessing the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *See id.*

Matthews first challenges the sufficiency of the evidence supporting his DUI conviction, arguing that the Commonwealth failed to demonstrate that he was under the influence of a prescription medication to a degree that impaired his ability to drive his vehicle safely. (*See* Matthews' Brief, at 6-9). He maintains that he was on a therapeutic level of methadone at the time of the accident. (*See id.*).

The applicable provision of the DUI statute states:

**(d) Controlled substances.—**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

\* \* \*

- 4 -

       (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(2).

This section does not require proof of a specific amount of a drug in the individual's system. *See Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012). "It requires only proof that the driver was under the influence of a drug or combination of drugs to a degree that the ability to drive is impaired." *Id.* (citing *Commonwealth v. Williamson*, 962 A.2d 1200, 1204 (Pa. Super. 2008) (testimony of erratic driving and intoxicated demeanor, coupled with proof that drugs were present, were together sufficient to prove that operator's ability to drive safely was impaired).

At trial, Matthews testified that on the morning of the collision, he received a 30-milligram dose of methadone. (*See* N.T Trial, 2/04/19, at 45-46). Webster testified that he was driving directly behind Matthews immediately before the accident, and that he observed Matthews' vehicle straddle the northbound lanes of traffic. (*See id.* at 8). Matthews crossed into the opposite southbound lane of traffic and ran into a stop sign. (*See id.*). Webster observed Matthews slump down in the front seat before the crash, and Matthews remained slumped over across the seat after the accident. (*See id.* at 8-9). The laboratory report showed a positive result for methadone in Matthews' blood and explained that "[a]dverse affects from methadone are characterized by stupor, lethargy, pupillary constriction,

hypotension and coma." (***Id.*** at 33). Officer Craig testified that his observation of Matthews after the crash was consistent with the adverse reactions listed in the report. (***See id.*** at 35).

Viewing the facts in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to permit the jury to find that Matthews operated his vehicle while under the influence of a drug that impaired his ability to control its maneuvering. Matthews drove erratically outside of his lane on the roadway, struck a stop sign, and lost control of his vehicle, landing in Pato's garage. Thus, Matthews' first sufficiency claim merits no relief.

Matthews next argues that the evidence supporting his REAP conviction was insufficient because he did not place anyone in fear of serious bodily injury or death. (***See*** Matthews' Brief, at 4). He maintains that the Commonwealth presented no evidence that he had driven carelessly or at an excessive speed. (***See id.*** at 10).

A defendant commits the offense of REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. The Commonwealth must prove that the defendant had an actual ability to inflict harm and that danger was created. ***See Commonwealth v. Martuscelli***, 54 A.3d 940, 949 (Pa. Super. 2012). As the Commonwealth points out, that **fear** of death or serious bodily is not an element of the crime. (***See*** Commonwealth's Brief, at 6).

The evidence at trial established that Matthews recklessly engaged in conduct that placed Pato in danger of death or serious bodily injury. The record reflects that Matthews received a dose of methadone, changed a flat tire, and drove erratically from the clinic. (*See* N.T. Trial, at 8, 46-47). He then collided into Pato's garage, while Pato was in his attached residence, laying only 15 feet away from the point of impact of Matthews' vehicle. (*See id.* at 18-19). By erratically driving his vehicle before crashing it headlong into Pato's residence in close proximity to where Pato was resting, Matthews clearly placed Pato in danger of both death and serious bodily injury. Accordingly, the evidence was sufficient for the jury to conclude that Matthews was guilty of REAP.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2020