J-S39032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HILARIO RIVERA-CRUZ | : | |
| | : | |
| Appellant | : | No. 682 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 21, 2020
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0005075-2017

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: FEBRUARY 22, 2023**

Appellant Hilario Rivera-Cruz appeals from the judgment of sentence imposed following his convictions for first-degree murder, aggravated assault, and possession of instrument of crime (PIC).  Appellant challenges the sufficiency and weight of the evidence.  We affirm.

The trial court summarized the factual and procedural history of this matter as follows:

> [Appellant] and Nelson Rivera-Reyes, a/k/a "Mosca" lived in rooms on the second and third floors respectively at 923 Washington Street, Reading.  Mosca lived with his stepson, Isaac Galan, [Appellant] lived alone.  [Appellant] and Mosca were neighbors for approximately three months at the time of the events described below.  Although cordial at first, relations between [Appellant] and Mosca deteriorated after [Appellant] allegedly observed Mosca and Isaac abusing drugs and alcohol. According to [Appellant], Mosca invited him to join Mosca in taking drugs.  When [Appellant] refused, Mosca allegedly threatened to kill [Appellant] if he snitched to police about Mosca's drug use. [Appellant] also said that on another occasion, Isaac and several

friends of Mosca accused [Appellant] of being a snitch and threatened to kill him.

On the evening of September 20, 2017, Samuel Rojas a/k/a "Tommy" received a telephone call from his friend Mosca asking him to come to Mosca's home because [Appellant] would not let Mosca go to his room. When Tommy arrived shortly before 11:00 p.m. he met Mosca outside 923 Washington Street. They talked for a few minutes and then Tommy, Mosca, Isaac and Tommy's friend, identified only as "Long [H]air" proceeded upstairs to the second floor. As they walked down the hallway, they encountered [Appellant] who was standing outside his room. Tommy approached him and asked what was going on. [Appellant] replied that he did not like Mosca and started to argue while in an agitated state. Tommy then started to climb up the stairs to Mosca's room on the third floor. Mosca, while holding an object in his right hand described as a golf club, began to talk to [Appellant]. Tommy turned and grabbed the club from Mosca's hand and threw it behind him.

Mosca and [Appellant] continued talking and [Appellant] became increasingly distraught and threatened to kill Mosca. [Appellant] then went into his room and took a knife from a bureau drawer. When he returned, he stabbed Mosca twice in the stomach and slashed him across his neck. Mosca then ran to an empty bedroom at the end of the hallway and closed the door behind him. [Appellant] pursued Mosca, opened the door, closed it and stabbed Mosca seven more times.[FN1] When he saw his stepfather stabbed in the hallway, Isaac left the premises and called the police.

> [FN1] Dr. Neil Hoffman, the Commonwealth's forensic pathologist, testified that a stab wound to the victim's right upper chest penetrated the sac around the heart and the heart's right ventricle. This led to significant bleeding around the heart called pericardiac tamponade which interfered with the pumping of the heart and ultimately caused the victim's death.

As [Appellant] emerged from the bedroom he swung at Tommy, missed and chased him down the stairs to the first floor. When they got to the street, Tommy ran to his car while being pursued by [Appellant]. Tommy's girlfriend was sitting in the driver's seat and [she] started the car as Tommy entered the back of the vehicle. They drove to the intersection of 9th and Walnut streets

where Tommy left the car and ran to the Reading Police Station nearby. When he arrived, he told an off-duty police officer what had happened, and the police proceeded to the scene.

At approximately 11:00 p.m. Officer Daniel White of the Reading Police Department received a call that someone reported a person stabbed their uncle. When the officer arrived at 9th and Washington Streets, he was approached by a person stating that his uncle had been stabbed and directed the officer to 923 Washington Street. After the officer arrived at that location, he exited the vehicle and entered the premises. From the vestibule, he observed [Appellant] standing at the top of the stairs holding a bloody knife in his right hand pointed toward the floor and a bottle of beer in his left hand. The person who first approached the officer said, "that's the guy." The officer pulled his firearm and asked [Appellant] to drop the knife. After several commands, [Appellant] dropped the knife and it stuck in the floor point downwards. He then told [Appellant] to drop the bottle of beer and proceed down the stairs. [Appellant] put the bottle on the floor and as he descended the staircase he stepped on the knife and slammed it into the floor so that it no longer stood up. When [Appellant] reached the porch, Officer White told him to put his hands up. [Appellant] refused to cooperate and reached into his pocket. Officer White then used his taser to stun [Appellant] and he fell face forward onto the sidewalk. By now other police officers had arrived on the scene and as they attempted to subdue [Appellant], he struggled to resist arrest. Officer White then used his taser a second time and the officers then successfully handcuffed [Appellant]. [Appellant] was taken to the Reading Hospital for evaluation and treatment and eventually incarcerated at the Berks County Jail.

The Commonwealth charged [Appellant] with murder of the first degree, [18 Pa.C.S. § 2502(a),] murder of the third degree, 18 Pa.C.S. [§] 2502(c), two counts of aggravated assault, 18 Pa.C.S. [§§] 2702(a)(1), . . . 2702(a)(4), possessing instruments of crime, 18 Pa.C.S. [§] 907(a), and terroristic threats, 18 Pa.C.S. [§] 2706(a)(1).[FN2]

> [FN2] The Commonwealth withdrew [the charges of] aggravated assault [under] Section 2702(a)(4) and terroristic threats at trial.

Trial Ct. Op., 6/30/22, at 1-4 (some formatting altered).

At trial, Appellant presented testimony from Larry A. Rotenberg, M.D., a psychiatrist who met with and evaluated Appellant on three occasions. N.T. Trial, 9/2/20, at 408-17, 422. Dr. Rotenberg diagnosed Appellant with hypomanic bi-polar disorder and alcohol use disorder. *Id.* at 434-36. Dr. Rotenberg opined that because of the combination of Appellant's mental health issues and alcohol intoxication, he was not capable of forming the specific intent to kill at the time Appellant stabbed the victim. *Id.* at 412-14, 21. Dr. Rotenberg also stated that he believed that Appellant had underreported his alcohol consumption. *Id.* at 442-43. Dr. Rotenberg estimated that on the night of the killing, Appellant had consumed three forty-ounce bottles of beer, which would have rendered Appellant intoxicated. *Id.* at 417-18, 420.

Appellant testified that he drank two beers on the night of September 20, 2017, and that he was not intoxicated when the victim came to his room and insulted Appellant. *Id.* at 459, 461, 470-71. Appellant claimed that the victim, the victim's friend Tommy, and the individual only known as "Long Hair" attacked Appellant with various items, including a golf club. *Id.* at 463-66, 489. Appellant said that he stabbed the victim in self-defense. *Id.* at 466. Appellant repeatedly testified that he only stabbed the victim twice. *Id.* at 466, 474-75, 482, 487, 492.

In rebuttal, the Commonwealth called John O'Brien, M.D., a psychiatrist who also evaluated Appellant prior to trial. *Id.* at 495-503. Dr. O'Brien explained that he could not reach a specific diagnosis for Appellant within a

- 4 -

reasonable degree of psychiatric certainty because Appellant's history of mental symptoms were too remote to be relied upon. *Id.* at 501-05. Dr. O'Brien further stated that he could not conclude to a reasonable degree of professional certainty that Appellant was intoxicated at the time of the murder. *Id.* at 507-11, 515-16, 521-22. Additionally, Dr. O'Brien opined that Appellant could perform intentional acts at the time of the murder. *Id.* at 518.

On September 3, 2020, the jury convicted Appellant of first-degree murder, aggravated assault, and PIC. N.T. Trial, 9/3/20, at 631.

The trial court summarized the subsequent procedural history as follows:

> On October 21, 2020, we sentenced [Appellant] to the mandatory sentence of life in prison without parole for murder of the first degree and a concurrent sentence of 18 months to five years for [PIC].[1] [Appellant] filed a post sentence motion on November 2, 2020, raising, *inter alia*, the issues of sufficiency of the evidence and the weight of the evidence. We denied this motion on November 4, 2020.
>
> [Appellant] did not file a notice of appeal within thirty (30) days of the entry of our order dismissing his post sentence motion as required by Pa.R.Crim.P. 720(A)(2)(a). Subsequently the court received a [*pro se*] letter from [Appellant] dated October 5, 2021, which the court deemed as having raised issues that could afford [Appellant] relief under the Post-Conviction Relief Act 42 Pa.C.S. [§] 9541 *et seq.* and appointed counsel to represent [Appellant] and file a PCRA petition. Counsel filed an amended PCRA petition and a hearing was scheduled for April 13, 2022. At the hearing,

_____

[1] The trial court concluded that Appellant's aggravated assault conviction merged with his murder conviction for sentencing purposes. *See* N.T. Sentencing Hr'g, 10/21/20, at 33.

the Commonwealth withdrew its opposition to [Appellant's] request to file an appeal *nunc pro tunc*.

Trial Ct. Op. at 5.

Appellant filed a notice of appeal of appeal *nunc pro tunc* on May 6, 2022.[2] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether the evidence was insufficient to find [Appellant] guilty of murder of the first degree, where [Appellant] had diminished capacity due to voluntary alcohol intoxication and the combination of his hypomanic bi-polar disorder with that intoxication rendered him incapable of creating the specific intent to kill?

2. Whether the verdict of guilty of murder of the first degree was against the weight of the evidence where diminished capacity was clearly shown by [Appellant's] voluntary alcohol intoxication and the combination of his mental illness made him incapable of creating the specific intent to kill?

Appellant's Brief at 3.

_____

[2] Generally, an appellant is required to file a notice of appeal within thirty days of the entry of the order reinstating his direct appeal rights *nunc pro tunc*. **See, e.g.**, **Commonwealth v. Wright**, 846 A.2d 730, 734-35 (Pa. Super. 2004). However, here while the PCRA court held a hearing regarding Appellant's petition on April 13, 2022, it did not enter an order reinstating Appellant's appellate rights *nunc pro tunc*. The only document filed on that date is a clerk's worksheet indicating an order would be filed later. **See** Clerk's Worksheet, 4/13/22 (stating "Results of Hearing: order to follow"); **see also** Trial Ct. Docket CR-5075-2017 at 18. Pursuant to an order of this Court, on August 1, 2022, the PCRA court entered an order reinstating Appellant's appellate rights *nunc pro tunc*. Appellant's May 6, 2022 notice of appeal relates forward to the PCRA court's August 1, 2022 order. **See** Pa.R.A.P. 905(a)(5) (stating that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"). Accordingly, we have jurisdiction over this appeal.

## Sufficiency of the Evidence

First, Appellant argues that the evidence was insufficient to establish the specific intent requirement of first-degree murder. *Id.* at 9-14 (citing, *inter alia*, *Commonwealth v. Fletcher*, 861 A.2d 898, 907-08 (Pa. 2004)). Specifically, Appellant argues that Dr. Rotenberg's testimony established that the combination of Appellant's voluntary alcohol intoxication and his hypomanic bi-polar disorder rendered him incapable of forming the specific intent to kill. *Id.* at 11-12 (citing N.T. Trial, 9/2/20, at 420-21, 423, 449). Appellant notes that he had been drinking on the day of the killing. *Id.* at 11 (citing N.T. Trial, 8/31/20, at 151; N.T. Trial, 9/1/20, at 254, 321). Additionally, Appellant contends that witness testimony describing Appellant's "bizarre" behavior before and after the murder supports his diminished capacity defense. *Id.* at 12-13 (citing N.T. Trial, 9/1/20, at 230, 232, 245, 263). For these reasons, Appellant concludes that the evidence was insufficient to establish, beyond a reasonable doubt, that he could form the specific intent to kill, and his conviction for first-degree murder must be reduced to third-degree murder.

Our standard of review is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be

resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Bragg*, 133 A.3d 328, 330-31 (Pa. Super. 2016) (citation omitted); *see also Commonwealth v. Vandivner*, 962 A.2d 1170, 1177 (Pa. 2009) (noting that a defense of voluntary intoxication "is a question of fact solely within the province of the jury, who is free to believe any, all, or none of the testimony regarding intoxication. Similarly, the defense of diminished capacity is a matter for a jury to believe or disbelieve as it sees fit" (citations omitted)).

First-degree murder is defined as: "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a).

Our Supreme Court has explained that "[t]o sustain a conviction for murder of the first degree, the Commonwealth must establish beyond a reasonable doubt that: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1076 (Pa. 2017) (citation omitted). "Specific intent to kill can be established through circumstantial evidence, such as the use of a deadly

weapon on a vital part of the victim's body[.]" ***Id.*** (citations omitted and formatting altered); ***see also Commonwealth v. Cain***, 503 A.2d 959, 967 (Pa. Super. 1986) (holding that the Commonwealth proved beyond a reasonable doubt that the defendant, who had presented evidence of his diminished capacity, had the specific intent to kill where the evidence showed that the defendant had stabbed the victim thirteen times).

Our Supreme Court has stated:

A defense of diminished capacity, whether grounded in mental defect or voluntary intoxication, is an extremely limited defense available only to those defendants who admit criminal liability but contest the degree of culpability based upon an inability to formulate the specific intent to kill. . . .

A diminished capacity defense does not exculpate the defendant from criminal liability entirely, but instead negates the element of specific intent. For a defendant who proves a diminished capacity defense, first-degree murder is mitigated to third-degree murder. To establish a diminished capacity defense, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill. The mere fact of intoxication does not give rise to a diminished capacity defense. Evidence that the defendant lacked the ability to control his or her actions or acted impulsively is irrelevant to specific intent to kill, and thus is not admissible to support a diminished capacity defense. Furthermore, diagnosis with a personality disorder does not suffice to establish diminished capacity.

***Commonwealth v. Hutchinson***, 25 A.3d 277, 312 (Pa. 2011) (citations omitted and formatting altered); ***see also Commonwealth v. Ventura***, 975 A.2d 1128, 1141 (Pa. Super. 2009) (explaining that "personality disorders or

schizoid or paranoid diagnoses are not relevant to a diminished capacity defense" (citation omitted)).

Further, "a showing of voluntary intoxication can negate the intent necessary for a conviction of first-degree murder and reduce the crime of murder from first to third degree." *Fletcher*, 861 A.2d at 907-08 (citing, *inter alia*, 18 Pa.C.S. § 308). However, the evidence presented "must show that the defendant was unable to form the specific intent to kill because he was so overwhelmed or overpowered by drugs to the point of losing his faculties at the time the crime was committed." *Id.* at 908 (citation omitted); *see also Commonwealth v. Blakeney*, 946 A.2d 645, 653 (Pa. 2008) (requiring that a defendant show that he was "overwhelmed to the point of losing his faculties and sensibilities" to prove a voluntary intoxication defense).

The defendant bears the burden to prove any defense related to his mental state by a preponderance of the evidence. *See Commonwealth v. Collins*, 810 A.2d 698, 701 (Pa. Super. 2002). As previously stated, the Commonwealth bears the burden to prove each element of first-degree murder, including the defendant acted with specific intent to kill, beyond a reasonable doubt. *See Jacoby*, 170 A.3d at 1076. However, "evidence of intoxication places no additional burden on the Commonwealth . . . . [T]he Commonwealth [is] not required to 'disprove' [the defendant's] intoxication at the time of the crimes." *Commonwealth v. Miller*, 897 A.2d 1281, 1285 (Pa. Super. 2006) (citation omitted); *see also Commonwealth v. Terry*, 521 A.2d 398, 404 n.14 (Pa. 1987) (noting that "although the risk of non-

persuasion remains with the Commonwealth in cases where the defense is defendant's lack of capacity to form the requisite intent, the Commonwealth does not have to produce expert testimony on the issue of capacity, or impeach or rebut the defense evidence" (citations omitted)), *overruled on other grounds by* **Commonwealth v. Frey**, 554 A.2d 27 (Pa. 1989).

Here, after careful consideration of the record, the parties' arguments, and the trial court's opinion, we affirm on the basis of the trial court's analysis of this issue. **See** Trial Ct. Op. at 6-15. Specifically, we agree with the trial court that, when viewed in the light most favorable to the Commonwealth, there was sufficient evidence demonstrating that Appellant acted with the specific intent to kill. **See id.**; **Bragg**, 133 A.3d at 330-31. We note that Appellant stabbed the victim nine times, which clearly established circumstantial evidence of his specific intent to kill. **See Jacoby**, 170 A.3d at 1076; **Cain**, 503 A.2d at 967. Additionally, the jury was free to believe, all, part, or none of the expert testimony of Dr. Rotenberg and Dr. O'Brien concerning Appellant's intoxication and mental health history. **See Vandivner**, 962 A.2d at 1177. For these reasons, we agree with the trial court that Appellant is not entitled to relief on this claim.

## Weight of the Evidence

Appellant also argues that his conviction for first-degree murder was against the weight of the evidence with respect to his specific intent to kill. Appellant's Brief at 14-16. Specifically, Appellant contends that his conviction shocks the conscience because "there was significant evidence that Appellant

was manifestly under the influence of alcohol to a degree that, when combined with his hypomanic bi-polar disorder, made him utterly incapable of creating the specific intent to kill." *Id.* at 15. Appellant asserts that the testimony in the record describing his intoxication and the expert opinion of Dr. Rotenberg support his weight claim. *Id.* at 15-16 (citing N.T. Trial, 8/31/20, at 151; N.T. Trial, 9/1/20, at 254, 321). Therefore, Appellant concludes that he is entitled to a new trial.

> This Court has explained:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the . . . verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (formatting altered); *see also Commonwealth v. Cousar*, 928 A.2d 1025, 1036 (Pa. 2007) (holding that an appellate court reviews a trial court's denial of a weight of the evidence claim for an abuse of discretion and stating that

"the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings" (citation omitted)).

Here, the trial court concluded that "the jury's verdict is not so contrary to evidence that would shock one's sense of justice. [Appellant] has not presented us with facts that are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." Trial Ct. Op. at 17.

Following our review of the record, the parties' briefs, and the well-reasoned opinion of the trial court, we find no abuse of discretion by the trial court in rejecting Appellant's weight claim. *See id.* at 16-17; *Cousar*, 928 A.2d at 1036; *Gonzalez*, 109 A.3d at 723. Accordingly, Appellant is not entitled to relief.

For these reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2023

- 13 -