J-S38002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.Z.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2037 EDA 2023 |

Appeal from the Decree Entered July 19, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000111-2023

BEFORE:   LAZARUS, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED NOVEMBER 7, 2023**

A.B. (Father) appeals from the decree, entered in the Court of Common Pleas of Philadelphia County, Juvenile Division, involuntarily terminating his parental rights to his minor child, A.Z.B. (born 05/2020), pursuant to section 2511 of the Adoption Act.[1]  Father's counsel, Harry R. Levin, Esquire, has filed

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 23 Pa.C.S.A. §§ 2101-2938.

an **Anders**[2] brief seeking to withdraw from representing Father on appeal.[3] After careful review, we affirm the trial court's decree and grant counsel's petition to withdraw.

The Philadelphia Department of Human Services (DHS) received a General Protection Services (GPS) report on October 7, 2020, alleging Philadelphia Police had responded to a domestic violence incident between Father and A.K. (Mother),[4] that Mother and A.Z.B. were locked out of the family home, that Mother had blood on her elbow, and that A.Z.B. was bleeding from his forehead. Mother admitted to accidentally hitting Father with a hammer, but stated she did not know how A.Z.B. had sustained a forehead injury. Police summoned paramedics to the scene after observing a lump on the back of A.Z.B.'s head, which was the size of a small orange. A.Z.B. was taken to the Children's Hospital of Philadelphia (CHOP). A medical examination indicated that A.Z.B. sustained a skull fracture and had

---

[2] **See Anders v. California**, 386 U.S. 738 (1967); **see also Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). The **Anders** principles and process have been extended to appeals involving termination of parental rights. **See In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992) (extending **Anders** briefing requirements to termination of parental rights appeals involving indigent parents represented by court-appointed counsel).

[3] DHS notified this Court that it agrees with Attorney Levin's conclusion that there are no meritorious grounds for appeal and, thus, will not file a brief. **See** Letter, 9/7/23.

[4] Mother's parental rights to A.Z.B. were involuntarily terminated on July 19, 2023. She is not a party to this appeal.

methamphetamine in his system. **See** N.T. Termination Hearing, 7/19/23, at 14-15.

On October 8, 2020, DHS obtained an Order of Protective Custody (OPC) for A.Z.B., who remained hospitalized at CHOP. On October 9, 2020, the court held a shelter care hearing, the OPC was lifted, and A.Z.B. was committed to the custody of DHS. The court adjudicated A.Z.B. dependent on March 19, 2021, found aggravated circumstances against both parents,[5] but ordered DHS to continue with reunification efforts. Father was incarcerated at the time of the adjudicatory hearing, and, since Covid-19 protocols were in effect at that time, Attorney Levin sent Father a link to participate remotely. Father, however, did not participate in the hearing.

DHS developed a single case plan (SCP) for Father, which included the following objectives: sign all necessary releases, attend medical appointments, complete dual diagnosis assessment, comply with assessment recommendations, complete random drug screens as per court order, complete domestic violence program, comply with Achieving Reunification Center (ARC) recommendations, and comply with court-ordered objectives regarding visitation, housing, and employment. **See** N.T. Termination Hearing, 7/29/23, at 36.

---

[5] **See** 42 Pa.C.S.A. § 6302(2) (child has been victim of physical abuse resulting in serious bodily injury, sexual violence, or aggravated physical neglect by parent).

The court held six permanency review hearings and made the following findings with regard to Father: October 1, 2021 (no compliance with permanency plan); February 15, 2022 (no compliance with permanency plan and no progress toward alleviating circumstances that necessitated original placement); May 16, 2022 (minimal compliance with permanency plan; minimal progress toward alleviating circumstances that necessitated original placement); August 1, 2022 (minimal compliance with permanency plan; no progress toward alleviating circumstances that necessitated original placement); October 18, 2022 (no compliance with permanency plan; no progress toward alleviating circumstances that necessitated original placement); and, January 24, 2023 (minimal compliance with permanency plan; no progress toward alleviating circumstances that necessitated original placement).

On March 24, 2023, DHS filed a petition to involuntarily terminate Father's parental rights to A.Z.B. On July 19, 2023, the court held a termination hearing. At the hearing, before the Honorable Cateria R. McCabe, Community Umbrella Agency (CUA) caseworker Ashley Wolfe testified that she has been involved with this case since its inception in 2020. She stated that, throughout the life of this case, DHS has had difficulty contacting Father, that Father would not make himself available to meet with DHS outside of court hearings, that his visits with A.Z.B. were "inconsistent," and that he attended a single case plan meeting, on September 30, 2022. *See* N.T. Termination Hearing, *supra* at 35-36. At the September 30, 2022 SCP meeting,

Caseworker Wolfe reviewed Father's objectives with him. Caseworker Wolfe testified that Father completed none of his objectives, except for the dual diagnosis assessment, which Father completed after the petition for termination was filed. *Id.* at 37-38. Caseworker Wolfe stated Father's compliance with his objectives was "minimal," *id.* at 39, and that he had made no progress toward alleviating the circumstances that brought A.Z.B. into care, including domestic violence. *Id.*

Caseworker Wolfe testified that A.Z.B., who was 3 years old at the time of the termination hearing, has been in foster care with his younger brother since 2020. *Id.* at 11, 44. She testified that A.Z.B. has a "parent[-]child" bond with foster parent, that A.Z.B. refers to foster parent as "mom," that A.Z.B. seeks comfort from foster parent, and that A.Z.B.'s basic needs are being met by foster parent. *Id.* at 32. Caseworker Wolfe characterized Father's bond with A.Z.B. as that of "uncle[-]nephew," adding that, in her opinion, they were not close, that A.Z.B. does not look to Father to meet any of his needs, and that A.Z.B. is not upset when he leaves visits with Father. *Id.* at 41.

Father did not appear at the hearing.[6] At the conclusion of the hearing, the court stated the following on the record:

---

[6] Attached to Attorney Levin's Anders brief is a copy of a letter from Father's physician, dated August 3, 2023, indicating that Father underwent a diagnostic medical procedure on July 10, 2023, and was stable to return to work on July 23, 2023, with no limitations. ***Anders*** Brief, Appendix A.

- 5 -

[Father] has made absolutely no progress. He visits at times but has failed to comply with the [SCP] objectives with [the] exception of approximately three. And those were after the filling of the goal change[/]termination petitions. He also has failed to provide any documentation of compliance with the [SCP] objectives. [V]isits have been inconsistent for [Father]. He[,] according to testimony, began to engage a little more since the last court date, which was May 31, 2023. There's no father[-]child bond. The testimony reflects he's more or less like an uncle to his son. Similarly, I find that [A.Z.B.] would not suffer any irreparable harm if [F]ather's rights are terminated. This child has been in care almost three years and needs permanency. Again, the foster parent is meeting his needs and his bond is with her and he calls her ["]mom["]. Thus, I find that it's in his best interest for the goal to be changed to adoption and parental rights to be terminated under [subsection] 2511(a)(1), (2), (5), and (8), as well as [subsection] (b).

N.T. Termination Hearing, at 78-79. On July 19, 2023, the court entered its decree terminating Father's parental rights to A.Z.B. Father filed this timely appeal. Both Father and the trial court complied with Pa.R.A.P. 1925.[7]

Counsel raises the following questions on behalf of Father:

1. Whether the trial court committed reversible error when it involuntarily terminated Father's parental rights where such determination was not supported by clear and convincing evidence under [] 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8)?

2. Whether the trial court committed reversible error when it involuntarily terminated Father's parental rights without giving

---

[7] Pa.R.A.P 905(a)(2) provides in pertinent part: "If the appeal is a children's fast track appeal, the concise statement of errors complained of on appeal as described in Rule 1925(a)(2) shall be filed with the notice of appeal and served in accordance with Rule 1925(b)(1)." Pa.R.A.P. 905(a)(2). Here, Father filed his Rule 1925(b) statement contemporaneously with his notice of appeal. The trial court's Pa.R.A.P. 1925(a) opinion sets forth the location in the record where the court stated the reasons for its decision. *See* Trial Court Opinion, 8/17/23, at 1-2.

primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of [A.Z.B.] as required by [] 23 Pa.C.S.A. § 2511(b)?

3. Whether the trial court erred because the evidence was overwhelming and undisputed that Father demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with [A.Z.B.]?

4. Whether Father was too ill to attend the termination hearing?

*Anders* Brief, at 6.

Our standard of review is well-settled:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result. We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

Before we begin our analysis, we must dispose of the application to withdraw as counsel filed by Attorney Levin. When counsel files an **Anders** brief, this Court may not review the merits without first addressing counsel's request to withdraw. **Commonwealth v. Washington**, 63 A.3d 797, 800 (Pa. Super. 2013). We review Attorney Levin's **Anders** brief for compliance with the requirements set forth by our Supreme Court in **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

> [C]ounsel must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 361.

Additionally, pursuant to **Commonwealth v. Millisock**, 873 A.2d 748 (Pa. Super. 2005) and its progeny, "[c]ounsel also must provide a copy of the **Anders** brief to his client." **Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014). Counsel must attach to the brief a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the Anders brief." **Id.** (internal quotation marks and citation omitted). "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct

its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." ***Commonwealth v. Goodwin***, 928 A.2d 287, 291 (Pa.Super.2007) (en banc), quoting ***Commonwealth v. Wright***, 846 A.2d 730, 736 (Pa. Super. 2004).

Here, Attorney Levin filed his petition to withdraw, indicating that he sent Father a letter informing him of his right to obtain new counsel, or to proceed *pro se*, and explaining that Father may raise any additional arguments with this Court. A copy of this letter is attached to the petition to withdraw. ***See*** Petition to Withdraw, 9/1/23; Letter to Father, 9/1/23. In his ***Anders*** brief, Attorney Levin sets forth the relevant history of the case, as well as his reasons for concluding that Father's appeal is wholly frivolous. Attorney Levin states in his petition that a copy of this brief was forwarded to Father. ***See*** Petition to Withdraw, 9/1/23. Accordingly, we conclude that Attorney Levin has complied with the technical requirements of ***Anders***, ***Santiago***, and ***Millisock***. We, therefore, proceed with our independent review of the record and the issues presented on Father's behalf.

Instantly, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with the trial court's findings under any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). After review, we conclude that the record supports termination under subsection 2511(a)(2).

Pursuant to subsection (a)(2), parental rights may be terminated, after the filing of a petition, when

> [t]he repeated and continued incapacity, abuse, neglect[,] or refusal of the parent has caused the child to be without essential parental care, control[,] or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

The record demonstrates that, at nearly every turn, Father has failed to show any initiative to act as a parent, causing A.Z.B. to be without the essential parental care or control necessary for his well-being. Because of Father's continued course of conduct, his failure to meet any of his objectives, and his inability or unwillingness to remedy the situation, we conclude DHS has met its burden of proof under section (a)(2). Accordingly, we conclude the trial court did not abuse its discretion in terminating Father's parental rights to A.Z.B. pursuant to 23 Pa.C.S.A. § 2511(a)(2).

With respect to subsection (b), Judge McCabe concluded termination was would best serve A.Z.B.'s "developmental, physical[,] and emotional needs and welfare," and, thus, termination was in A.Z.B.'s best interests. *See* 23 Pa.C.S.A. § 2511(b) ("The court in terminating the rights of a parent shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child."). The record, in particular Caseworker Wolfe's testimony, supports this determination. *See In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008) (when conducting bonding analysis, court is not

required to use expert testimony); *see also. In re A.R.M.F.*, 837 A.2d 1231 (Pa. Super. 2003) (holding court properly terminated parental rights where decision was based in part on social worker's and caseworker's testimony children did not share significant bond with biological parents and were well bonded with foster parents).

With respect to the third issue, that the trial court erred because "the evidence was overwhelming and undisputed that Father demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship [A.Z.B.]," *Anders* Brief, at 6, no relief is due. There is nothing in the record that would support this claim.

Further, the final issue, whether Father was too ill to attend the termination hearing, merits no relief. Other than a photocopy of a letter attached to the *Anders* brief, there is nothing in the record that would enable this Court to review this claim. Moreover, even granting that Father was unable to physically attend, there is nothing indicating that Father could not attend the hearing virtually or by phone. Furthermore, Father's attendance at the hearing would not undo the prior three years of inability or failure to demonstrate any progress or interest in maintaining a relationship with A.Z.B. *See In re A.L.D.*, 797 A.2d 326, 340 (Pa. Super. 2002) ("Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities."); *see also In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) ("Parental rights are not preserved by waiting for

a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.").

Finally, our review of the record does not reveal any non-frivolous issues overlooked by Attorney Levin.

After our independent review, we conclude that the evidence presented supports the trial court's decree involuntarily terminating Father's parental rights pursuant to subsections 2511(a)(2) and (b). **See In re Z.P.**, 904 A.2d 1108, 1115 (Pa. Super. 2010) (absent abuse of discretion, error of law, or insufficient evidentiary support for trial court's decision, decree in termination of parental rights proceeding must stand).

Decree affirmed. Motion to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/7/2023