J-A08041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.S., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1288 WDA 2022 |

Appeal from the Order Entered September 30, 2022
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-DP-0000011-2020

| | | |
|---|---|---|
| IN RE: ADOPTION OF: B.L.S. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: B.S., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1168 WDA 2022 |

Appeal from the Decree Entered September 9, 2022
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
O.A. No. 22-2021

BEFORE:  STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED: APRIL 6, 2023**

In these consolidated appeals, B.S., Jr. (Father) appeals a decree and an order of the Court of Common Pleas of Butler County Orphans' Court (trial court) concerning his biological minor child, B.L.S. (the Child). In case 1168 WDA 2022, the trial court involuntarily terminated Father's parental rights as

_____

[*] Retired Senior Judge assigned to the Superior Court.

to the Child; and in case 1288 WDA 2022, the trial court changed the Child's permanency goal from parental reunification to adoption.[1] These proceedings also affected the parental rights of W.L.H., the Child's mother (Mother), but Mother is not a party to the present appeals. Counsel for Father has petitioned this Court to withdraw from the case on the ground that the appeals have no merit, attaching to the petition a brief filed pursuant to **Anders v. California**, 386 U.S. 738 (1967). For the following reasons, we grant counsel's petition to withdraw and affirm the termination decree and goal change order.

**I.**

The Child was born in June 2012. When the Child was seven years old, on February 3, 2020, the Butler County Children and Youth Agency (the Agency) received reports as to Mother and Father's substance abuse and poor housing conditions. The Agency opened an investigation and a caseworker was assigned to the case.[2]

The Agency's caseworker contacted several family members and learned that Mother and Father had recently taken the Child from the home of her paternal grandmother (Paternal Grandmother), who was the Child's legal

---

[1] These appeals were consolidated by this Court, *sua sponte*, on December 7, 2022.

[2] The Agency and the appointed guardian *ad litem* for the Child are the Appellees in both of these consolidated appeals.

guardian at the time, and that the parents subsequently failed to return the Child to the Paternal Grandmother for several days.

After a few failed attempts to visit Mother and Father at their home, the Agency contacted Father by telephone on February 4, 2020, and he denied the above allegations reported to the Agency. However, on February 5, 2020, the Agency completed a home visit at which Mother admitted to cocaine use. The Agency also found that the home did not have a working furnace and that pipes were frozen. The Agency learned as well that the Child was last seen by her primary care physician in 2014 at the age of two, that she was behind on her immunizations, and that she had never seen a dentist. The Child had never gone to school, as the Child was not yet of compulsory school age during the periods in which she was in Father's custody. Father explained that it was his right not to enroll the Child; however, the Child had not received an education of any kind at her parents' home.

In addition, the Agency discovered that Father had been incarcerated the day prior to the visit, and that he had tested positive for cocaine, Suboxone and THC. These circumstances led to the Agency's concerns that neither the parents nor the alleged guardian, who at that time had regained custody of Child from parents, had been ensuring Child's safety or provided for basic medical and dental care.

On February 11, 2020, the Agency filed a petition alleging that the Child was a dependent child under 42 Pa.C.S. § 6302(1). A pre-adjudication hearing

was held on February 13, 2020, which resulted in the detention of the Child. A shelter care hearing was held the next day, leading to the Child's placement in the care of her maternal aunt.

At the adjudication hearing held February 20, 2020, Mother admitted that she was actively using cocaine, and Father admitted that he had cocaine in his system at the time of his incarceration on February 4, 2020. Both parents admitted that their home lacked heat and water at the relevant times. The Child was adjudicated as a dependent.

At the disposition hearing held March 11, 2020, a child permanency plan was implemented, requiring Mother and Father to: (1) maintain a sober lifestyle by undergoing a comprehensive drug treatment regimen and periodic drug testing; and (2) demonstrate an ability to meet the Child's basic medical and educational needs.

Subsequent review hearings demonstrated that Mother and Father had failed to comply with all of the requirements of the permanency plan which would facilitate reunification. Accordingly, on October 22, 2020, the Agency filed a motion for a hearing on whether there existed aggravated circumstances under 42 Pa.C.S. § 6302(1)(ii) which would warrant a change in the Child's permanency plan.

A hearing on the above motion was held on December 18, 2020, and neither parent attended. The trial court found that there were aggravated circumstances based on Mother and Father's lack of supervised contact with

the Child for the preceding six-month period. Although Mother and Father were permitted to have supervised visitation with the Child, they had only visited the Child in person once during the preceding months. Father claimed to have been in regular contact with the Child, but there were no witnesses to these interactions so none of that alleged contact was substantiated.

At the next three permanency review hearings held on January 20, 2021 and April 14, 2021, the assigned hearing officer found that despite being informed of the conditions for reunification with the Child, the Agency had remained unable to confirm that Mother and Father had participated in substance abuse programs or maintained regular contact with the Child. Rather, Father had been repeatedly incarcerated and had tested positive for illegal substances.

On April 27, 2021, the Agency filed a petition for involuntary termination of parental rights against Mother and Father pursuant to Pa.C.S. § 2511(a)(1), (2), (5), and (8). Following multiple permanency review hearings at which it was established that the relevant circumstances of the Child, Mother and Father had not been remedied, the Agency filed a motion for a goal change on August 19, 2021, seeking to have the Child adopted rather than reunified with her parents. Mother and Father both signed an adoption consent on December 8, 2021. However, Father withdrew his adoption consent about two weeks later after he had gotten into a dispute with the Child's maternal aunt about limits on his ability to contact the Child.

On February 18, 2022, the Child's maternal aunt asked that the Child be removed from her home. The trial court then issued an order directing that the Child be placed in a confidential foster home instead. Mother's parental rights were terminated on May 13, 2022.

On September 8, 2022, the trial court held a hearing as to both the Agency's motion for goal change and as to the requested termination of Father's parental rights. Father appeared at the hearing and he was represented by counsel.

At the hearing, the Agency presented the testimony of the Child's school principal, who testified that prior to enrolling, the Child lacked basic educational preparation, requiring the Child to repeat the second grade. The Agency also called the assigned caseworker who oversaw the initial investigation into the Child's circumstances. The caseworker corroborated the facts outlined in the Agency's petitions as to the Child's poor housing conditions, her parents' substance abuse, and the lack of medical care. Other members of the Agency established Father's ongoing lack of supervised contact with the Child after she had been placed into kinship and foster care.

With respect to Father's criminal history, the Agency showed that Father had been incarcerated on several occasions during the relevant periods – February 4 to 19, 2020; June 26 to 29, 2020; July 7 to 9, 2020; January 22 to May 25, 2021; and October 1 to 4, 2021. In fact, Father's most recent incarceration had begun on April 18, 2022, and Father had remained

incarcerated at the time of the hearing due to his arrest on charges of DUI and possession of controlled substances. On November 17, 2022, Father was sentenced to a prison term of one to five years as to those offenses. Further, it was undisputed that Father had failed to comply with the drug treatment and testing requirements of the permanency review orders.

At the conclusion of the hearing, the trial court terminated Father's parental rights to the Child. *See* Decree, Opinion and Order 9/9/2022, at 1-3. An order was later entered on September 29, 2022, changing the Child's permanency goal from reunification with a parent to adoption. Father timely appealed both the decree and the order.

## II.

When counsel files an *Anders* brief, this Court may not review the merits of an appeal without first addressing counsel's request to withdraw. *See Commonwealth v. Washington*, 63 A.3d 797, 800 (Pa. Super. 2013); *see also In re V.E.*, 611 A.2d 1267, 1275 (Pa. Super. 1992) (applying this principle in the context of appeals of the termination of parental rights).

Counsel appointed to represent a parent in an appeal challenging the involuntarily termination of parental rights may petition this Court for leave to withdraw from representation. *See In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004). In doing so, however, counsel must file an *Anders* brief in compliance with the procedures outlined in *Commonwealth v. Santiago*,

978 A.2d 349 (Pa. 2009), in which our Supreme Court directed that counsel must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Additionally, counsel must furnish a copy of the *Anders* brief to the client and advise the client of the right to retain new appellate counsel, proceed *pro se*, and raise additional issues not included in the *Anders* brief. *See Commonwealth v. Millisock*, 873 A.2d 748 (Pa. Super. 2005). "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Goodwin*, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*) (quoting *Commonwealth v. Wright*, 846 A.2d 730, 736 (Pa. Super. 2004)).

In the present case, Father's counsel has complied with the requirements of withdrawal from representation. Counsel filed a petition to withdraw in which she certified her conscientious review of the record, along with her determination that Father's appeals have no merit. Counsel also filed an *Anders* brief which includes a summary of the procedural history and facts

of the case; references to portions of the record that might arguably support Father's appeals; and counsel's assessment as to why the appeals are frivolous. Finally, counsel attached to her petition the letter that she sent to Father advising of his right to retain new counsel to pursue the appeal; proceed *pro se* on appeal; and raise any additional points that Father deems worthy of this Court's attention. Thus, because counsel satisfied the requirements of **Anders** and **Santiago**, the petition to withdraw is granted.

### III.

### A.

Having determined that counsel is compliant with **Anders** and **Santiago**, we must now "review the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." **Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

We first consider the decree involuntarily terminating Father's parental rights. As to this decree, the following standard of review applies:

> [A]ppellate courts [must] accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights and requires a bifurcated analysis. *See* 23 Pa.C.S. § 2511. That is, the initial focus is on the conduct of the parent, and if termination is warranted by that conduct, then the best interests of the child must then be considered:

> The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re J.N.M.*, 177 A.3d 937, 942 (Pa. Super. 2018) (citation omitted).

Here, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). These statutory provisions read as follows:

> (a) General rule. The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his

physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

(b) Other considerations. The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), the court shall not consider any efforts by the parents to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

A decree terminating parental rights may be affirmed as long as this

Court agrees with the trial court that any one subsection of Section 2511(a),

as well as Section 2511(b), is satisfied. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Upon our review of the record, we find that the trial court did not abuse its discretion in determining that subsections 2511(a)(1) and (a)(2) were each satisfied. As to subsection 2511(a)(1), Father demonstrated for a period of at least six months immediately preceding the filing of the Agency's termination petition that he had a settled purpose of relinquishing his parental claim to the Child and refused or failed to perform his parental duties.

At the time his parental rights were terminated, Father was incarcerated, as he had been throughout much of the Child's time in kinship and foster care. For the preceding two years, he had failed to make progress in addressing his substance abuse issues. During that time, Father had maintained little documented contact with Child. All of these circumstances support termination under subsection 2511(a)(1), and the trial court did not abuse its discretion in terminating Father's parental rights to the Child pursuant to that statutory ground.

The same is true as to subsection 2511(a)(2). The record demonstrated that the Child was removed from Father's custody because Father had failed to provide essential parental care. Father's lack of progress in being able to provide for the Child's needs, as well as Father's continued incarceration at the time of the termination of parental rights, established that the circumstances which led to the Child's placement in foster care would not be

remedied by Father. Thus, the trial court did not abuse its discretion in terminating Father's parental rights under subsection 2511(a)(2).

As to subsections 2511(a)(5) and (a)(8), Father's periods of incarceration render those provisions inapplicable. Although the trial court referred to those subsections as grounds to terminate Father's parental rights in its decree and opinion, those provisions both concern the direct removal of a child from a parent's custody. As the Agency conceded in its brief, the Child was technically never "removed" from Father's custody because he was incarcerated at the times when the Child was placed in kinship and adoptive care. *See In re Z.P.*, 994 A.2d 1108, 1123 n.2 (Pa. Super. 2010) (citing *In re C.S.*, 761 A.2d 1197, 1200 (Pa. Super. 2000) (*en banc*)).

Turning to subsection 2511(b), we find that the trial court's findings are supported by the record. When considering Section 2511(b), "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citing *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)). "[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011).

"[A] parent's basic constitutional right to the custody and rearing of ... her child is converted, upon the failure to fulfill ... her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). The emotional bond of a parent with his or her child is a primary consideration of a child's best interests, yet it is only one of several factors to be evaluated by the trial court when determining what is in a child's best interests and deciding whether to terminate parental rights. *See In re C.D.R.*, 111 A.3d 1212, 1219-20 (Pa. Super. 2015).

In this case, Father expressed his love for the Child and desire to be reunified. However, Father had also demonstrated during the preceding two years that he was unable to provide for the Child's needs and wellbeing. At the termination hearing, the Agency presented ample evidence that the Child has been thriving in her foster home. Significantly, the Child sent the trial court a letter expressing her hope to be adopted permanently by her foster family.

As of the date of the hearing, the Child was enrolled at school, involved in extracurricular activities, and up-to-date with her medical needs. The Child had also made strides in her academic performance, which starkly contrasts with the complete lack of education the Child received while in her parents' care. Overall, the record strongly evidences a lack of a bond between the

Child and Father, such that the termination of Father's parental rights would not destroy an existing, necessary and beneficial relationship. Thus, the trial court did not abuse its discretion in determining that these circumstances amounted to clear and convincing evidence that the termination of parental rights was in the best interests of the Child.

**B.**

We next address the trial court's order changing the goal from reunification to the adoption of the Child. Father argues that the trial court abused its discretion in changing the Child's placement goal because it was predicated solely on Father's incarceration.

In light of our decision to affirm the termination decree as to the Child, Father's appeal of the goal change order is now moot. ***See Interest of D.R.-W.***, 227 A.3d 905, 917 (Pa. Super. 2020) (citing ***In re D.A.***, 801 A.2d 614, 616 (Pa. Super. 2002) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.")).

Even assuming that Father's claim is not moot, we would conclude he is not entitled to relief. A goal-change order is reviewed under an abuse-of-discretion standard. ***See D.R.-W.***, 227 A.3d at 917 (citing ***In re R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010)). As such, we must accept the trial court's findings of fact and credibility determinations if the record supports them, but we need not accept the court's inferences or conclusions of law. ***Id.***

At a permanency hearing, a trial court must review the permanency plan of a child and determine whether placement is in the best interests of the child. *See* 42 Pa.C.S. § 6351(e). A trial court is statutorily mandated to consider several matters at a permanency hearing, including:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

* * * *

(6) Whether the child is safe.

* * * *

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

- 16 -

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

\* \* \* \*

(12) If the child has been placed with a caregiver, whether the child is being provided with regular, ongoing opportunities to participate in age-appropriate or developmentally appropriate activities. In order to make the determination under this paragraph, the county agency shall document the steps it has taken to ensure that:

(i) the caregiver is following the reasonable and prudent parent standard; and

(ii) the child has regular, ongoing opportunities to engage in age-appropriate or developmentally appropriate activities. The county agency shall consult with the child regarding opportunities to engage in such activities.

42 Pa.C.S. § 6351(f).

A parent's rights are secondary to a child's in a proceeding to change a dependent child's placement goal. *See In re R.M.G.*, 997 A.2d 339, 347 (Pa. Super. 2010). The Agency has the burden to demonstrate that a goal change would serve a child's best interest, safety, permanency, and a child's wellbeing must take precedence over all other considerations. *See id.*; *see also* 42 Pa.C.S. § 6351(f), (f.1), (f.2), and (g).

Contrary to Father's claim in this case, the trial court did not rely solely on Father's incarceration to justify the goal change to adoption. In its 1925(a) opinion, the trial court outlined a number of additional factors, including Father's use of illicit substances; his failure to substantially participate in drug

and alcohol treatment; his failure to drug screen on a regular basis; and his failure to attend to the Child's educational and medical needs. *See* Trial Court 1925(a) Opinion, 11/29/2022, at 6-9.

The trial court weighed those facts against the Child's circumstances during her placement in kinship care and foster care over a nearly two-year span. The trial court found that the Child's needs were being met in her current placement because she was in a safe and loving environment and was engaged in age-appropriate activities, such as cheerleading and gymnastics. By contrast, Father had failed to demonstrate any progress in alleviating the aggravating circumstances which necessitated the Child's initial placement. In fact, at the time of the Child's detention and the hearing itself, Father was incarcerated and still consistently testing positive for controlled substances. Thus, even if the challenge were not moot, the goal change order would be upheld because the trial court's reasons are supported by the record.

Petition to withdraw granted. Termination decree affirmed. Appeal from goal change order dismissed as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/6/2023

- 18 -