J-S41006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LARRY ALLEN SLEDGE | : | |
| | : | |
| Appellant | : | No. 76 WDA 2023 |

Appeal from the Judgment of Sentence Entered October 31, 2022
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000722-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LARRY ALLEN SLEDGE | : | |
| | : | |
| Appellant | : | No. 77 WDA 2023 |

Appeal from the Judgment of Sentence Entered October 31, 2022
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000388-2020

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED: March 5, 2024**

In this consolidated appeal, Larry Allen Sledge appeals *nunc pro tunc* from the judgment of sentence entered in the Erie County Court of Common Pleas on October 31, 2022. After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

In January 2020, at docket 388 of 2020, a criminal complaint was filed charging Sledge with attempted homicide, aggravated assault, and other crimes related to the shooting of Jessica Crouch. Two months later, at docket 722 of 2020, a criminal complaint was filed charging Sledge with intimidation of a witness for allegedly contacting Crouch to have her drop the charges.

On August 12, 2022, following a jury trial, Sledge was convicted of the charges in both dockets, i.e., attempted homicide and related offenses in 388 of 2020, and intimidation of a witness at 722 of 2020.

On October 31, 2022, the trial court sentenced Sledge to an aggregate term of twenty-six to fifty-two years' incarceration.

On November 21, 2022, Sledge filed a *pro se* petition for post-conviction collateral relief seeking, among other relief, to have his appellate rights reinstated. The trial court entered an order granting the petition to the extent that Sledge could file a notice of appeal *nunc pro tunc*. The order also stated that Attorney Bruce Sandmeyer was to continue to represent Sledge during the pendency of the appeal, and that "Counsel shall file his notice of appeal within thirty (30) days." Order, 11/30/2022.

On December 7, 2022, Attorney Sandmeyer filed a post-sentence motion and a motion to withdraw as counsel at both docket numbers. The following day, the trial court entered orders granting Attorney Sandmeyer's motion to withdraw as counsel, directing that appellate counsel be appointed

for Sledge, and ordering the Commonwealth to respond to the post-sentence motion within fourteen days.

On December 20, 2022, the trial court entered an order at both docket numbers appointing Attorney Tina Fryling to represent Sledge. Two days later, the Commonwealth filed its response to the post-sentence motion. On the same date, the trial court entered an order denying the post-sentence motion, based on the reasons set forth in the Commonwealth's response. Notably, that order did not mention Sledge's appeal rights or the time within which an appeal must be filed.

On January 18, 2023, Attorney Fryling filed two separate notices of appeal, one under each docket, on Sledge's behalf.

Preliminarily, we must address our jurisdiction to entertain this appeal because an untimely appeal divests this Court of jurisdiction to entertain the appeal. *See Commonwealth v. Edrington*, 780 A.2d 721, 725 (Pa. Super. 2001). We may address questions of our jurisdiction *sua sponte*. *See id.*

"Absent extraordinary circumstances, an appellate court lacks the power to enlarge or extend the time provided by statute for taking an appeal." *Commonwealth v. Williams*, 106 A.3d 583, 587 (Pa. 2014) (citations omitted). "Thus, an appellant's failure to appeal timely an order generally divests the appellate court of its jurisdiction to hear the appeal." *Id*. (citations omitted).

Generally, a post-sentence motion must be filed within ten days after the imposition of sentence, and to be timely, an appeal must be filed within thirty days of the entry of the order deciding the motion. **See** Pa.R.Crim.P. 720(A)(2)(a). An untimely post-sentence motion does not toll the time to file an appeal. **See Commonwealth v. Green**, 862 A.2d 613, 618 (Pa. Super. 2004) (*en banc*).

Typically, "[w]hen the trial court issues an order reinstating an appellant's appeal rights, the appellant must file the appeal within 30 days of the order reinstating the appeal rights." **Commonwealth v. Wright**, 846 A.2d 730, 734 (Pa. Super. 2004). The **Wright** court explained:

> [R]einstatement of direct appeal rights nunc pro tunc denotes that the appellant now has the same direct appeal rights as he would have had in the beginning. Since in the beginning an appellant ordinarily must file his direct appeal within thirty days of the date of imposition of sentence (or the date of entry of the order disposing post-sentence motions [pursuant to Pa.R.Crim.P. 720]), it is logical and fair to apply the same thirty-day rule when an appellant's direct appeal rights are restored *nunc pro tunc*.

**Id**. at 735 (internal footnote omitted). Further, the Pennsylvania Supreme Court has held that an order reinstating direct appeal rights does not automatically grant the right to file a post-sentence motion *nunc pro tunc*. **See Commonwealth v. Liston**, 977 A.2d 1089, 1093-94 (Pa. 2009). An appellant must request leave to file a post-sentence motion *nunc pro tunc* in addition to the request for restoration of appellate rights. **See id.** at 1094 n.9. A trial court's resolution of an appellant's impermissible post-sentence motion is no substitute for an order expressly restoring the right to file a post-

sentence motion *nunc pro tunc*, and in these circumstances we treat such a motion as untimely. **See Wright**, 846 A.2d at 733-34.

Here, Sledge did not seek leave to file a post-sentence motion *nunc pro tunc* and the trial court's November 30, 2022 order reinstating Sledge's appeal rights did not also expressly reinstate Sledge's right to file a post-sentence motion *nunc pro tunc*. Further, the order clearly stated that counsel shall file a notice of appeal within 30 days. Accordingly, Sledge's post-sentence motion was untimely and did not serve to toll the appeal period. It was error for the PCRA court to review the merits of Sledge's belated post-sentence motion when he had never been granted the right to file such a motion.

The notices of appeal filed on January 18, 2023, were therefore facially untimely as they were filed more than thirty days after the entry of the order reinstating Sledge's direct appeal rights. **See** Pa.R.A.P. 903 (directing that a notice of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken); **Wright**, 846 A.2d at 734 ("When the trial court issues an order reinstating an appellant's appeal rights, the appellant must file the appeal within 30 days of the order reinstating the appeal rights.").

However, the trial court failed to inform Sledge that his untimely post-sentence motion did not toll the thirty-day appeal period. **See** Pa.R.Crim.P. 720(B)(4)(a) (providing that "[a]n order denying a post-sentence motion ... shall include notice to the defendant of the ... right to appeal and the time limits within which the appeal must be filed...."). This Court has found that

- 5 -

such circumstances constitute a breakdown in court operations and thus provide grounds to excuse an otherwise untimely appeal. ***See Commonwealth v. Juray***, 275 A.3d 1037, 1040 n.1 (Pa. Super. 2022) (citation omitted). For these reasons, we consider Sledge's appeal timely.

Sledge raises the following issues on appeal:

1. The trial court erred in failing to grant [Sledge]'s motion under Rule 600, as the Commonwealth failed to bring the case to trial within the 365 day deadline cited in Pennsylvania Rule 600.

2. The trial court erred in failing to rule that the Commonwealth erred in failing to turn over exculpatory evidence, namely that witness for the Commonwealth Ryan Nelson had been offered a plea deal for testifying at trial.

3. The trial court erred in failing to rule that juror number 26 should have been stricken for cause when that juror stated that she knew the assistant district attorney who was prosecuting the case and had grown up with her as a childhood friend.

4. The trial court erred in failing to rule that juror number 24 should have been stricken for cause when that juror stated that she worked with one of the police officers who was testifying for the Commonwealth.

5. The trial court erred in failing to grant [Sledge]'s post sentence motion and grant him a new trial when after acquired evidence was attached to the post sentence motion.

6. The trial court erred in allowing hearsay testimony regarding the identification of [] Sledge as the shooter by the victim.

Appellant's Brief, at 2-3 (unnecessary capitalization omitted).

We consider the Rule 600 issue first, because if we were to find a violation, it would dispose of the appeal. The proper remedy for the

- 6 -

Commonwealth's failure to try a defendant within 365 non-excludable days is dismissal of the complaint with prejudice. ***See*** Pa.R.Crim.P. 600(A)(2)(a), (D)(1); ***see also Commonwealth v. Sloan***, 67 A.3d 1249, 1251 (Pa. Super. 2013) (discharging a defendant for a Rule 600 violation). However, we cannot reach the merits of this issue as Sledge has failed to preserve his Rule 600 challenge for appellate review.

We note that Rules 2117(c) and 2119(e) of the Pennsylvania Rules of Appellate Procedure mandate that litigants specify the manner in which issues were preserved and the location in the record where the issue appears and was preserved. ***See also Commonwealth v. Bomar***, 826 A.2d 831, 847 (Pa. 2003) (holding that this Court has no duty to peruse lengthy records to find support for issues raised by a defendant). Sledge fails to point to any part of the record where this issue was preserved. In fact, Sledge fails to cite to the record at all in support of this issue.

Although it is not our duty to do so, this Court has sifted through the record and discovered numerous *pro se* filings under each docket requesting nominal bond pursuant to Rule 600(B). However, we were only able to find one document that could be construed as a Rule 600(A) motion. Even if we could construe this document as a Rule 600 motion, there is no indication that this motion was properly filed and served. Rule 600 requires the filing of a written motion. ***See*** Pa.R.Crim.P. 600(D)(1). A written motion in a criminal case is "filed" with the clerk of courts. ***See*** Pa.R.Crim.P. 567(A)(1). Here, it

- 7 -

appears the motion was filed as it is timestamped by the clerk of courts. However, we cannot locate a docket page in the record to verify that this filing appears on the docket. Further, Rule 600 also mandates that a "copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing." Pa.R.Crim.P. 600(D)(1); *see also* Pa.R.Crim.P. 600, cmt. ("A copy of the motion must be served on the attorney for the Commonwealth, who has a right under this rule to be heard on the motion.") There is no indication in the record that service was made to the Commonwealth. Accordingly, we are unable to tell from the record whether or not a proper Rule 600 motion was filed. It is clear that a Rule 600 hearing was never held, and that Sledge never requested relief from the trial court on this *pro se* motion either before or during trial.

On appeal, this Court cannot consider matters outside of the record. **See Commonwealth v. Ross**, 57 A.3d 85, 96–97 (Pa. Super. 2012) (*en banc*) ("This Court does not rely on items dehors the record, such as assertions in an appellate brief or a trial court opinion.") We simply cannot effectively review the denial of an improperly filed motion when combined with the lack of a hearing that was never requested by Sledge. Accordingly, Sledge failed to preserve his Rule 600 claim.

We note, even if not waived, this issue is without merit. On appeal, Sledge only challenges two time periods being counted against him: (1) the 33 days between March 31, 2021, when Sledge's counsel filed a motion to

withdraw as counsel, and May 3, 2021, the date trial was continued to due to needing to address the motion to withdraw, and (2) the delay caused by the court's response to Sledge's omnibus pretrial motion that he filed on his own behalf, including the need for a suppression hearing, and a continuance of that hearing requested by Sledge's standby counsel. These delays were clearly not attributable to the Commonwealth and occurred "as the result of circumstances beyond the Commonwealth's control and despite its due diligence." Pa.R.Crim.P. 600, cmt. As such, they would be excluded from the computation of time under Rule 600. Therefore, there is no merit to Sledge's contentions under Rule 600.

In his second issue, Sledge contends the trial court erred in declining to find the Commonwealth committed a **Brady**[1] violation by allegedly failing to turn over exculpatory evidence; specifically, that Commonwealth witness Ryan Nelson had been offered a plea bargain in exchange for his testimony at Sledge's trial.

In order to establish a **Brady** violation, the Pennsylvania Supreme Court has explained:

> There are three components of a true **Brady** violation: [t]he evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

---

[1] **See Brady v. Maryland**, 373 U.S. 83 (1963).

*Commonwealth v. Natividad*, 200 A.3d 11, 25 (Pa. 2019) (citations omitted). Additionally, "[a] reviewing court is not to review the evidence in isolation, but, rather, the omission is to be evaluated in the context of the entire record." *Commonwealth v. Dennis*, 17 A.3d 297, 309 (Pa. 2011) (citation omitted).

First, Sledge fails to explain why he could not have raised this issue earlier. Sledge admits that he learned of a promise made to Nelson in exchange for his testimony during the Commonwealth's closing argument at trial. *See* Appellant's Brief, at 25. However, a review of the record shows that the decision to not charge Nelson was actually discussed multiple times throughout the trial.

Detective Pilarski testified that he discussed with Nelson that due to his involvement, there was a possibility that he could be charged. However, Detective Pilarski clarified that Nelson was not charged because he was forthcoming, and it was clear from his interview that Nelson believed he was simply helping Sledge send a letter to his girlfriend and he did not know that the letter was being used to intimidate a witness. *See* N.T., Jury Trial Day 3, 8/11/22, at 53-54. Next, the Commonwealth affirmed Detective Pilarski's testimony that Nelson was ultimately not charged due to his cooperation during a sidebar, outside the presence of the jury, right after the close of the Commonwealth's case. *See* N.T., Jury Trial Day 4 – A.M. Session, 8/12/22, at 41. This was prior to Sledge presenting his case, including testifying on his

own behalf. Finally, the Commonwealth again affirmed, during closing arguments, that Nelson was ultimately not charged due to his cooperation. *See* N.T., Jury Trial Day 4 – Afternoon Session, 8/12/22, at 73.

Sledge has failed to explain why he did not challenge this information during trial, prior to sentencing, or in a timely post-sentence motion. Accordingly, this issue is arguably waived. *See* 42 Pa.C.S.A. § 9544(b) (stating "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal[,] or in a prior state postconviction proceeding"); *Commonwealth v. Chmiel*, 30 A.3d 1111, 1129 (Pa. 2011) (concluding that the appellant's *Brady* PCRA claim concerning an alleged deal between the prosecutor and two material witnesses was waived for failure to have raised it in an earlier proceeding).

Even if not waived, the contention is without merit. The trial court found, and the Commonwealth argues, that Sledge failed to present any evidence that the Commonwealth made any promises to or deals with Nelson in exchange for his testimony at Sledge's trial. However, even if we assume *arguendo* that a promise were made, we find that Sledge has failed to show that evidence of a promise would have been exculpatory, or that he was prejudiced by the withholding of that information.

We first address Sledge's failure to explain how a potential promise made with Nelson was material or exculpatory. Sledge was charged under docket 722 with intimidation of a witness based on a letter that was sent to

- 11 -

Crouch. Crouch contacted the police after receiving the letter which bore Nelson's inmate number. The letter was also signed by another inmate Chester Burrows. Crouch indicated that she did not know Nelson. While she knew Burrows, she was certain the handwriting in the letter was Sledge's.

Nelson testified that he let Sledge use his inmate number to send a letter "to his girl" but did not know why Sledge could not send the letter himself, and Nelson never saw the letter. N.T., Jury Trial Day 2, 8/10/22, at 147-48. Nelson testified that he knew the handwriting on the letter was Sledge's because he had also given Sledge his inmate number for Sledge to write a letter to Nelson's girlfriend due to Nelson's hand being broken. **See id**. at 149.

Nelson was not the only individual to testify regarding the letter sent to Crouch. Crouch testified to receiving the letter. **See** N.T., Jury Trial Day 1, 8/9/22, at 77-82. While Burrows' signature appeared on the letter, Burrows testified that Sledge never asked him to write a letter, he never in fact wrote a letter for Sledge, and the handwriting on the letter was not his. **See** N.T., Jury Trial Day 2, 8/10/22, at 143. Detective Ronald Pilarski testified regarding his investigation of the letter, including his pretrial interviews with Crouch, Burrows, and Nelson. **See** N.T., Jury Trial Day 3, 8/11/22, at 50-61. Finally, a handwriting expert testified regarding his review of questioned documents submitted to him, including the letter, and his ensuing report in which he concluded the letter was authored by Sledge. **See** N.T., Jury Trial Day 4 - A.M.

Session, 8/12/22, at 7-31. Consequently, Nelson's testimony was not material and could readily be considered cumulative evidence.

Further, Sledge has failed to establish that he was prejudiced by the Commonwealth's failure to tell him about the alleged promise to Nelson. At trial, the Commonwealth pursued the charge of intimidating a witness as a felony of the first degree, based on their theory that Sledge had conspired with Nelson to send the letter to Crouch. Sledge focused his argument on challenging the classification of the charge as a felony of the first degree. In fact, Sledge ultimately confessed to sending the letter to Crouch and only challenged that there was no conspiracy between him and Nelson to send a letter to Crouch. *See* N.T., Jury Trial Day 4 – Afternoon Session, 8/12/22, at 33 (stating he had nothing to hide and wanted to accept responsibility for his mistakes, but agreeing with Nelson's and Burrows' testimony that they had no involvement with the letter). In his testimony, Nelson corroborated Sledge's argument. Nelson maintained that he simply allowed Sledge to use his inmate number to send a letter to his girl, and that he did not know what the contents of the letter were. *See* N.T., Jury Trial Day 2, 8/10/22, at 147. Nelson denied corroborating with Sledge at all. *See id*. at 151-52. Since Nelson's testimony corroborated Sledge's own version of events, it is unclear how potential impeachment evidence would have benefited Sledge. Therefore, Sledge has failed to prove prejudice.

As Sledge has failed to establish the evidence was material or that he was prejudiced, his second issue merits no relief.

In his third and fourth issue, Sledge argues the trial court erred in failing to exclude two prospective jurors for cause. Specifically, Sledge asserts juror number 26 should have been stricken for cause when she stated she knew the assistant district attorney ("ADA") who was prosecuting the case; and juror number 24 should have been stricken for cause when she stated she worked with one of the police officers who was testifying for the Commonwealth.

During *voir dire*, Sledge's counsel and the ADA had the following exchange with juror number 24:

> [SLEDGE]: Hello. I put a circle right here because I was kind of figuring you had some type of issue.
>
> [ADA]: 24?
>
> [JUROR 24]: I know the one officer that was named.
>
> [ADA]: Matt Balou?
>
> [JUROR 24]: Mm-hmm.
>
> [ADA]: Does your knowledge of him, would you be able to --
>
> [JUROR 24]: I've been friends with him a few years and I've worked with him in different programs.
>
> [SLEDGE]: Okay.
>
> [ADA]: Would you be able to still listen to the evidence and make a determination?
>
> [JUROR 24]: In terms of, like, whether I would be more partial to what he said?

[ADA]: I'm not asking partiality. I'm just asking we'll ask you to listen to everyone on the stand and evaluate each individual. Would you be able to do that?

[JUROR 24]: Sure.

[SLEDGE]: I was wondering if you would have bias judgment towards maybe the defense because you have a relationship.

[JUROR 24]: Because I have a relationship with him?

[SLEDGE]: Yeah. So I want to know if you have like a bias judgment towards the defendant, because I mean, you know, police do make mistakes, too.

[JUROR 24]: Right. I mean I would try my best to be impartial.

[SLEDGE]: Okay.

[ADA]: That's it. Thank you.

*Voir Dire*, 8/8/2022, at 38-40.

The following exchange occurred with juror number 26 shortly thereafter:

[ADA]: Hello.

[JUROR 26]: How are you doing?

[ADA]: I know you indicated you know who I am. I would just for him ask you to describe how we know each other.

[JUROR 26]: My -- you were friends with my sister in college.

[ADA]: Would you say you and I are close?

[JUROR 26]: No.

[ADA]: Okay, would your knowledge of who I am make you unable to listen to the evidence and make a decision?

[JUROR 26]: No.

- 15 -

[SLEDGE]: Would you have any type of bias for Mrs. Hoffman? We're, like, going against each other.

[JUROR 26]: No. I do get what you're saying.

[SLEDGE]: I don't her to feel -- you feel like it would be an awkward situation? I mean I understand.

[JUROR 26]: No, I don't think awkward.

[SLEDGE]: You know, because she might lose.

[JUROR 26]: No, I feel -- I feel comfortable making a decision.

[SLEDGE]: Okay. All right, well, thank you.

[ADA]: All right, thanks.

(The Juror was reseated.)

[ADA]: I haven't seen her in 12 years.

[SLEDGE]: She's all right I guess.

*Id*. at 41-42.[2]

A review of the testimony of prospective jurors 24 and 26 given during *voir dire* indicates that the nature of their relationships with the ADA and a police officer testifying for the Commonwealth was not of such a nature that a presumption of prejudice was warranted. Further, their answers to the

_____

[2] In his issue statement for juror number 26, Sledge misconstrued the nature of the relationship between the juror and the ADA. While Sledge asserted that juror number 26 had grown up with the ADA as a childhood friend, this is simply not true. Rather, juror 26 only knew the ADA because the juror's sister had gone to college with the ADA. ***See id***.

questions during *voir dire* did not evidence a likelihood that their ability to serve as fair and impartial jurors had been prejudiced by these relationships.

The *voir dire* transcript shows Sledge acquiesced to both juror 24 and juror 26 and did not object to their inclusion as jurors. Further, a review of the record shows that Sledge never raised an issue with the jurors either during trial or at sentencing. As Sledge never motioned to strike for cause a prospective juror, we cannot find the trial court erred in failing to dismiss either juror for cause.

Sledge's fifth issue, challenging the denial of his post-sentence motion, is easily disposed of. As we have already concluded Sledge's post-sentence motion was untimely filed, the court should not have ruled on the motion in the first place. Accordingly, we cannot fault the trial court for failing to grant the untimely post-sentence motion. Sledge's fifth issue is without merit.

In his final issue, Sledge asserts the trial court erred in allowing hearsay testimony regarding the victim's identification of Sledge as the shooter.

On the first day of trial, prior to the jury coming in, Sledge orally raised a motion *in limine* challenging the admission of a statement as a dying declaration. **See** N.T., Jury Trial Day 1, 8/9/22, at 12-13. In the statement, made by Crouch to Officer Matthew Valloud, Crouch identified Sledge as the shooter. The Commonwealth responded that it was not seeking to admit the statement under the dying declaration exception to the hearsay rule, explaining as follows:

[THE COMMONWEALTH]: Thank Your Honor. Your Honor, the Commonwealth is not seeking to admit Jessica Crouch's statement under dying declaration. She is not a declarant unavailable; she is very much so available. She will be testifying here today. That statement from Officer Valloud will be entered under Rule 803.12, that is a prior statement of identification.

Jessica Crouch is available here today. She will be testifying to corroborate that statement that Patrolman Valloud will testify to.

THE COURT: Well, basically if she's going to testify, then she obviously didn't pass away. So you'll be able to cross-examine her if there's any issue on that.

MR. SLEDGE: No problem.

THE COURT: All right?

MR. SLEDGE: As far as her hearsay statement, I'm going to let that stay in.

*Id*. at 13-14. Accordingly, on direct examination, Officer Valloud was asked about his interaction with Crouch, to which he explained as follows:

[Commonwealth:] Okay. Did you speak to the victim at all?

[Officer Valloud:] Yes, I did.

[Commonwealth:] And what was the result of that?

[Officer Valloud:] So when I approached her I asked her if she was shot or who shot -- or, I'm sorry. If she was shot where she was shot at. She said her head. At that time I did ask her who shot her. She said Larry Sledge.

[Commonwealth:] Did she say this once?

[Officer Valloud:] I asked her again, I said who shot you, she said it twice, she said, yes, Larry Sledge.

*Id*. at 43. Sledge was then permitted to cross-examine Officer Valloud. Crouch subsequently testified for the Commonwealth and she was subject to cross-examination by Sledge as well.

Sledge alleges Officer Valloud's testimony was improper hearsay because he accuses Officer Valloud of specifically stating that the victim's statement was a dying declaration. This claim is belied by the record. As recounted above, Officer Valloud never stated the statement was a dying declaration. Instead the statement was properly admitted as a statement of pretrial identification. "Testimony by a police officer concerning acts of pretrial identification by a witness is [admissible], where the identifying witness is present in court and subject to cross-examination." ***Commonwealth v. Ballard***, 460 A.2d 1091, 1092 (Pa. 1983) (citation omitted). Sledge clearly acquiesced to Officer Valloud testifying regarding Crouch's prior statement of identification. Since Crouch was present in court and subject to cross-examination, this issue is without merit.

As all of Sledge's issues are either waived or without merit, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/5/2024